```
                                        FILED
                                        CLERK
                                        1/26/2016
           UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK     U.S. DISTRICT COURT
                                          EASTERN DISTRICT OF NEW YORK
                                              LONG ISLAND OFFICE

TIMOTHY TANSKI,               . Civil No. 15-cv-06260-AKT
                              .
         Vs.                  .
                              . 100 Federal Plaza
                              . Central Islip, NY 11722
AVALON BAY COMMUNITIES, INC., .
                              . DATE: January 12, 2016
. . . . . . . . . . . . . . . .


              TRANSCRIPT OF INITIAL CONFERENCE
         BEFORE THE HONORABLE A. KATHLEEN TOMLINSON
              UNITED STATES MAGISTRATE JUDGE



APPEARANCES:


For The Plaintiffs:    HACH ROSE SCHIRRIPA & CHEVERIE
                       BY: FRANK R. SCHIRRIPA, ESQ.
                       185 Madison Avenue
                       14th Floor
                       New York, NY  10016

For The Defendants:    EPSTEIN BECKER & GREEN
                       BY:  PATRICK BRADY, ESQ.
                            MICHAEL THOMPSON, ESQ.
                       One Gateway Center
                       Newark, NJ  07102




Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
```
___

**TRACY GRIBBEN TRANSCRIPTION, LLC**
859 Nutswamp Road
Red Bank, New Jersey 07701
**(732) 263-0044    Fax No. 732-865-7179**
800 603-6212
www.tgribbentranscription.com

Colloquy 2

1      THE CLERK: Calling civil case 15-6260, Tanski versus
2 Avalon Bay Communities, Incorporated. Please state your
3 appearance for the record.
4      MR. SCHIRRIPA: Good morning, Your Honor, Frank
5 Schirripa from the law from Hach Rose Schirripa and Cheverie.
6 Along with me is my colleague.
7      THE COURT: If it's still morning, I'm having a
8 complete nightmare here. But again.
9      MR. SCHIRRIPA: Good afternoon. It's been a rough
10 couple of days, sorry.
11     THE COURT: Go ahead.
12     MR. SCHIRRIPA: With my colleague Kim Staines
13 (phonetic), for plaintiff and the putative class.
14     THE COURT: All right.
15     MR. SCHIRRIPA: Thank you.
16     THE COURT: Good afternoon.
17     MR. BRADY: Good afternoon, Your Honor, Patrick G.
18 Brady, Epstein Becker and Green, with Michael Thompson for
19 Avalon Bay.
20     THE COURT: All right. I see that you've been
21 briefing a motion to dismiss. A couple of things. Mr. Brady,
22 I know you've been here before. And I'm sure you've been in
23 front of Judge Wexler before. So you he's, number one, not
24 going to permit me to stay discovery here, and number two, he's
25 not going to permit to bifurcate it either. So it was a nice

1  try and I understand why you asked for it.  But I also have my
2  marching orders.  So we'll proceed from there.  All right?
3              MR. BRADY:  Understood, Your Honor, I tend to
4  simplify things.
5              THE COURT:  All right.  In terms of what you're
6  raising in the motion to dismiss, does any of this, I see the
7  basis of the claim is a Lundy violation, did you raise, are you
8  planning to raise any defenses here about the, whether or not
9  Mr. Tanski is exempt?
10             MR. BRADY:  No, Your Honor.
11             THE COURT:  Okay.  So you're not arguing that point.
12             MR. BRADY:  No, Your Honor, he's not exempt.
13             THE COURT:  Okay.  All right, so this is solely on
14 the basis of the number of hours worked in any given week to
15 fulfill the Lundy standard.
16             MR. BRADY:  That is correct, Your Honor.
17             THE COURT:  Okay.  All right.  And you understand
18 that based on <u>Lundy</u> and most of the cases that have been issued
19 after it, the Courts have taken the posture that everybody is
20 going to get a crack at repleading.
21             MR. BRADY:  Understand that as well, Your Honor.
22             THE COURT:  All right, so with all those things in
23 mind, then let's talk about where we're going.  Okay?  So I see
24 that this is a putative class action, collective action for
25 failure to pay overtime.  There's also a claim here for

1  inaccurate wage statements under Section 195 of the New York
2  Labor Law.  The plaintiff's claiming that Avalon Bay failed to
3  pay its current and former employees, including the plaintiff,
4  overtime compensation for all hours worked in excess of 40
5  hours a week.  According to the complaint, Avalon Bay did this
6  by improperly categorizing certain time worked by the plaintiff
7  and other employees as non productive overtime, excuse me, a
8  non productive hours.  And Avalon Bay claims that an employee's
9  non productive hours are not eligible for overtime
10 compensation, even when an employee works more than 40 hours a
11 week in a work week.
12         The plaintiff argues that defendant's policy of
13 assigning different pay rates for productive and non productive
14 hours is a unilateral employment decision that's not reflected
15 in any agreements between the defendant and their employees.
16 And so in lieu of answering I see, as I said, that there's soon
17 to be a pending motion to dismiss.
18         Now, the briefs will be fully completed by January
19 19th, correct?
20         MR. SCHIRRIPA:  Correct, Your Honor.
21         THE COURT:  Okay.  All right, and as to the
22 bifurcation issues, I indicated, I have no ability to do that.
23 And so if you are really pressed about that, you can certainly
24 make the application to Judge Wexler, but I wouldn't be
25 terribly optimistic.  So, I'll leave that to you.  All right?

1    MR. BRADY: Thank you, Your Honor.
2    THE COURT: All right, that means what I'm going to
3 put in place is the normal calculation of discovery deadlines
4 that we would have done in any event under Judge Wexler's rules
5 and timing. And so that's what we're going to talk about for a
6 moment.
7    One of the things that I would like to get set up
8 front is whether or not, and again without an answer it's hard
9 to decipher all of the affirmative defenses. But is your
10 client in any way asserting a claim that they don't meet the
11 $500,000 annual gross revenues threshold to make them an
12 employer under the FLSA?
13    MR. BRADY: No, Your Honor.
14    THE COURT: Okay. And so on that basis, what I've
15 done in these cases, and continue to do, is I'd like the
16 parties to enter into a stipulation to that effect, saying
17 essentially you're not contesting that fact. And the reason
18 I'm asking you to do that, since that will no longer be an
19 issue that the plaintiff has the burden of proof on, I'm not
20 going to require the company then to produce all the financial
21 records that would go to that issue. All right? So that
22 exchange has worked out well in other cases, I expect the same
23 would happen here. So I'm going to give you two weeks, if you
24 would, to get that stipulation filed on ECF.
25    MR. BRADY: Yes, Your Honor.

1         THE COURT: All right, there's no, on the checklist
2 that I sent to you, there's nothing checked off on initial
3 disclosures, which would lead me brilliantly conclude that
4 perhaps you haven't exchanged those yet, or am I wrong?
5         MR. SCHIRRIPA: They were exchanged today, Your
6 Honor.
7         THE COURT: Today?
8         MR. BRADY: We exchanged them today, Your Honor.
9         THE COURT: Good, all right. And you don't believe
10 there's a need for a stipulation order of confidentiality,
11 that's fine. As to the ESI that's here?
12         MR. BRADY: Your Honor, may I be heard for a moment?
13         THE COURT: Sure.
14         MR. BRADY: Because this case may involve, at some
15 point in the discovery process, as we deal with opt-ins and so
16 forth, there, I anticipate that there may be requests for
17 information relating to time records and payroll records.
18 Under those circumstances I think a stipulation of
19 confidentiality would be appropriate.
20         THE COURT: Okay. Do you want to be heard on that?
21         MR. SCHIRRIPA: We did check if off as being needed,
22 Your Honor. So we agree.
23         THE COURT: Oh, forgive me. I'm sorry. I went down
24 to the wrong line. All right. So here's what I'm going to
25 have you do. Normally my course here is to have you go ahead

1  and serve your demands and then within two weeks after the
2  demands are served, to actually file the confidentiality stip.
3  And the reason I like that timing is, both sides are going to
4  have the opportunity to see what the other side is asking for.
5  So if there's something you didn't anticipate that perhaps you
6  want to include in the confidentiality stip, you should know it
7  at that point, at least by the time the demands are served.
8          And in this instance, and again I'm going by our own
9  calculations, the demands need to be served here by February
10 16th.  So two weeks after that roughly, if my math is correct,
11 just bear with me a for a second here, just look at the
12 calendar, so it would be the 1st of March, okay?
13         So you've had some discussion about the parameters of
14 ESI in this case, what that consists of.  The question I have
15 is twofold.  One for example, to defendant's counsel, the
16 payroll records, are those done, is payroll done internally in
17 the business or is it done by an outside vendor?
18         MR. BRADY:  Your Honor, I don't know the answer to
19 that.
20         THE COURT:  You don't know yet?
21         MR. BRADY:  We're going to find out.  I'm sorry,
22 Your Honor, I don't know the answer to that.
23         THE COURT:  Okay.
24         MR. BRADY:  That's one of the things that we have to
25 meet with the client.

1 THE COURT: Figure out, okay.
2 MR. BRADY: But Your Honor, I would strongly suspect
3 that it's an outside payroll service that does this.
4 THE COURT: All right. And so --
5 MR. SCHIRRIPA: Your Honor, I can say that our
6 client's paycheck did come from an Avalon Bay office in
7 Virginia.
8 THE COURT: Okay. So the paystub, do they have a
9 paystub or just a check?
10 MR. SCHIRRIPA: What he has at this point was --
11 THE COURT: I'm sorry, pick it up and pull it over,
12 it's fine.
13 MR. SCHIRRIPA: Sorry.
14 THE COURT: It moves.
15 MR. SCHIRRIPA: At this point, what our client was
16 able to provide us with was a --
17 THE COURT: Was a pay stub?
18 MR. SCHIRRIPA: Right. Several examples were annexed
19 to the complaint.
20 THE COURT: Okay. And, well, here, let me just take
21 a quick look then. Okay, so this is on a ledger that says
22 Avalon Bay Communities, Inc. It doesn't necessarily mean it
23 wasn't done by an outside vendor, just means that there would
24 be some indicia that perhaps it was done inside. But you'll
25 find that out one way or the other.

1    And the reason I was asking that is because I want to
2    know exactly how the records were kept here.  In other words,
3    during the course of the day, were these people presumably
4    working at a site or working at the site where the offices are
5    located, or working at a different site from where the offices
6    are located?
7            MR. SCHIRRIPA:  The employees would be working at a
8    residential site.
9            THE COURT:  Okay.
10           MR. SCHIRRIPA:  And that would include, Your Honor,
11   well, because the scope of the collective action is any hourly
12   employee, I think what I can represent to the Court right now,
13   when you're dealing with a service side of the business, which
14   is essentially the maintenance, and the sale side of the
15   business, which are apartment rentals, my understanding is that
16   both of those parts of the business are on the residential
17   site.
18           THE COURT:  Okay.
19           MR. SCHIRRIPA:  There may be other hourly employees
20   at headquarter locations, or other business locations.
21           THE COURT:  Yes.  Let me ask you a question, how
22   many people does Avalon Bay employ?
23           MR. SCHIRRIPA:  Approximately 3,000, Your Honor.
24           THE COURT:  Okay.  All right, so I doubt very much
25   that class is going to get certified that says any hourly

1  employee.  And hopefully plaintiffs understand that too.  But
2  we'll see where this leads.  All right?
3          As to the payroll and why I was raising the question
4  is, if the plaintiff's working at a residence for example, how
5  is the time recorded?  In other words, do they have to sign a
6  sheet when they come in in the morning, and when they leave at
7  night, or when they're out for lunch?  Does someone, some
8  manager or supervisor do that for them?  Do they call in their
9  time?  Do they actually fill out a sheet and then what
10 eventually gets put into company headquarters or the onsite
11 vendor for purposes of putting together this pay stub?
12          MR. BRADY:  To start with initial procedure, it is an
13 electronic recording of time based upon a thumb or fingerprint.
14 Which will indicate punching in, punching out and so forth.
15          THE COURT:  Okay.
16          MR. BRADY:  However, Your Honor, as I'm sure you know
17 from your experience in some these cases, people forget to
18 punch sometimes.
19          THE COURT:  Yes.
20          MR. BRADY:  So there is a hard copy form called a
21 time card adjustment form, which the employee has to fill out
22 and sign.  And then the reason for the adjustment form is on
23 the form.  And then that information I believe is then entered
24 into the system.  But it's no longer the employee with the
25 thumbprint or the fingerprint, it now has to be entered

1  electronically but -- because it has to go electronically
2  because that's how the payroll gets generated.
3           THE COURT: All right. That's helpful. So, looking
4  to this universe of materials that may ultimately be the
5  confines of electronically stored information here, the
6  question is, did you have any discussion, I see that you talked
7  about the 502 provisions, and that's fine, I will incorporate
8  that. My question is, did you have any discussion about the
9  manner in which the production would take place, since Rule 26,
10 in addition to requiring you to have a separate agreement in
11 place as to the production of ESI, also allows the requesting
12 party to demand the manner in which the actual production takes
13 place.
14          So for example if you're the requesting party and you
15 want the materials in the traditional manner of hard copy
16 that's fine. If you want the materials on a disc in some type
17 of searchable software format, that's also fine. We routinely
18 have requests from people to do things in a TIFF or PST files.
19 In some strange instances people even agree to have them
20 produced in PDFs. But depends on whether you want load files,
21 whether you just want image files, and that will be up to you
22 to figure out. So I will leave that to you to come to a final
23 decision. But whatever that final determination is, I want it
24 reduced to a further writing here.
25          MR. BRADY: Thank you, Your Honor. We haven't gotten

1  that far in discussion.  We --
2           THE COURT:  You need to get on the mic.
3           MR. BRADY:  In ESI protocol, do you have a deadline
4  and set that you want us to --
5           THE COURT:  I'm going to give that same deadline of
6  March 1st for the confidentiality agreement and for this
7  agreement, okay?
8           MR. BRADY:  Thank you.
9           THE COURT:  This is just to basically hammer out some
10 of the things I want you to make sure are included in the
11 protocol and the agreement.  Okay?  And again, as long as you
12 two, or both sides agree, I'm not going to have any problem
13 with what you propose.  All right?
14          So looking to the schedule, you'll serve by, as I
15 said, February 16th, as you know I give the parties six weeks
16 to respond to the demands that are served.  That would put you
17 at March 29th as the response date.  Because this is an FLSA
18 case, and we're not likely to be in a position to know who else
19 may be joined here, I'm going to hold in abeyance the deadline
20 to make any motions to add parties or to amend the pleadings.
21 So for now, until the rest of this is worked out, that will be
22 a to be determined designation.
23          And then I will, when I see you here at the end of
24 May for a status conference, -- and bear with me for a minute,
25 I see there were references here to motion practice for

Colloquy 13

1 collective action certification. Are you going to abide by
2 what's in here?
3     MR. SCHIRRIPA: We would like to, Your Honor.
4     THE COURT: Well, I mean you have the, no one can
5 stop you from making the motion, it's not as if you're
6 precluded. I'd just like to get the dates in place if you've
7 actually agreed to them. I see that, I'm looking at your plan.
8 You set April 18th as the day by which you'd like to get that
9 motion filed. Yes?
10     MR. SCHIRRIPA: No, Your Honor.
11     THE COURT: No, what am I missing?
12     MR. SCHIRRIPA: Under C we proposed making the motion
13 by February 16th.
14     THE COURT: Oh, I'm sorry, I'm looking at defendant's
15 deadline. Okay. So you want to do this by February 16th,
16 that's a little ambitious given when you're going to serve your
17 demands, you still want to hold that date?
18     MR. SCHIRRIPA: We can do that. The issue, Your
19 Honor, if I may, there's an opt-in tolling issue for statute of
20 limitations.
21     THE COURT: Sure.
22     MR. SCHIRRIPA: So I don't want to prolong filing the
23 conditional motion.
24     THE COURT: Perfectly fine.
25     MR. SCHIRRIPA: And --

1                THE COURT:  All I'm saying to you is, this means
2    you're simultaneously filing a motion and serving your demands
3    the same day.  It seems like a lot.  But if you want to do
4    that, that's perfectly fine.
5                MR. SCHIRRIPA:  It's okay.  Never been afraid of
6    work.
7                THE COURT:  All right, very good.
8                MR. SCHIRRIPA:  If I may, with respect to the next
9    portion of this, with the opposition.
10               THE COURT:  Yes.
11               MR. SCHIRRIPA:  Defense counsel has proposed their
12   opposition due after they receive transcripts from proposed
13   depositions, and I think this was --
14               THE COURT:  That's not going to happen, so.
15               MR. SCHIRRIPA:  Okay.
16               THE COURT:  There's a very low threshold for
17   collective action certification.  I'm sure by the time counsel
18   has to file his opposition he'll know enough in terms of having
19   whatever factors he needs to at least oppose the motion.
20               MR. SCHIRRIPA:  Thank you, Your Honor.
21               THE COURT:  All right, so let's look at the calendar.
22   I'm going to give you a month to respond to this, Mr. Brady,
23   all right?
24               MR. BRADY:  So I'm going to be responding to their
25   motion and answering their discovery at the same time?

1           THE COURT:  Well, your answer to their discovery is
2    due March 29th.  This is February 16th.  Are you doing this by
3    letter motion or by formal motion under the Federal Rules?
4           MR. SCHIRRIPA:  By formal motion under the Federal
5    Rules, a proposed order.
6           THE COURT:  Okay.
7           MR. SCHIRRIPA:  If Your Honor would prefer a letter
8    motion we can truncate it, but.
9           THE COURT:  No, it doesn't matter to me. I mean the
10   choice is really yours.  Okay?  There are no replies on letter
11   motions, so that's the risk you run by filing a letter motion.
12   So, if you want to leave it a formal motion, it's perfectly
13   fine.
14          MR. SCHIRRIPA:  Formal motion, Your Honor.
15          THE COURT:  All right.  Now I am going to give a
16   little bit of extra time here.  You've got until April 11th to
17   file any opposition, okay?
18          MR. BRADY:  Thank you, Your Honor.
19          THE COURT:  And how long do you want for a reply?  I
20   mean normally I'd give you a week, but I'm giving counsel extra
21   time, if you want two weeks, I'll give you two weeks.
22          MR. SCHIRRIPA:  Two weeks would be excellent, thank
23   you.
24          THE COURT:  Okay.  All right, so that would be the
25   25th.  Okay?  Those motions by the way are returnable before

1  me.  Judge Wexler has us do any collective action certification
2  motions that come to him.
3              All right, then I will see you here, let me just look
4  at the calendar with you, June 1st for a discovery status
5  conference.  Do you have a preference for morning or afternoon?
6              MR. BRADY:  Later in the morning is fine, Your Honor,
7  I can miss a few bridges.
8              THE COURT:  Late morning. That work?
9              MR. SCHIRRIPA:  That's fine with me, late morning.
10             THE COURT:  Okay.  So, 11:30.
11             MR. BRADY:  That's fine, Your Honor.
12             THE COURT:  That's about as late as we get.  All
13 right.  Mr. Schirripa, I think you've been here before me
14 previously too, haven't you?
15             MR. SCHIRRIPA:  Yes, we currently have one case
16 ongoing.
17             THE COURT:  Okay.  All right, so you understand that,
18 I know Mr. Brady's been here before, that I require the parties
19 to file a discovery status report three days ahead of that
20 conference.  And essentially without going into tremendous
21 detail again, just summarizing for you what you need to put in
22 there.  First of all, you need to, you're free to put in
23 anything that you might want to discuss at the conference,
24 that's fine.  But I want you first of all to confirm to me that
25 the paper discovery at that point has been completed.  And any

1  objections that you had to each other's productions have been
2  resolved. And if not you'll tell me why not.
3           Number two, I want confirmation that your clients
4  signed off on the interrogatory responses as to their accuracy
5  and completeness, you sign off as to the objections.  Number
6  three, you're going to tell me if there are any outstanding
7  discovery disputes between you. If there are you're going to
8  briefly summarize the dispute.  And secondly give me the legal
9  support for the arguments you're making on behalf of your
10 client.
11          And as you know, I limit these to three pages.  So in
12 all candor, when I say legal support, just me the citations to
13 the cases you're relying on.  That's sufficient for my
14 purposes.  And then the only caution there is, if the discovery
15 dispute is still over a specific response to a specific demand,
16 whether it's an interrogatory or a document request, please be
17 sure when you're providing this to me that you're in conformity
18 with Rule 37.1, which is how you present a disputed
19 interrogatory or document request to the Court.  And that is
20 setting out first of all verbatim the request as it was
21 written.  Second underneath of that, putting in the verbatim
22 response your received.  And then underneath of that,
23 explaining to me the basis as specifically as you can, for the
24 objection continuing.
25          And so the last thing of the four items is to confirm

1  to me that you had a further meet and confer with each other,
2  and you agreed on the witnesses whose depositions need to be
3  taken in the case. And that includes both parties and non
4  parties.
5           Once you get through your meet and confer to prepare
6  that report, if it turns out that you don't have any
7  outstanding discovery disputes, and you're on time, as you've
8  got to be here, because again it's Judge Wexler's case, in that
9  instance you can file one joint discovery status report and
10 whoever files it just be sure you've individually and
11 specifically addressed those four areas I just went over with
12 you.
13          If you're behind for some reason, or there is an
14 outstanding discovery dispute, then you each need to file your
15 own separate report on ECF because you'll need to first of all,
16 give me your version of the dispute and then also give me your
17 supporting citations.
18          Now when you come back in on June 1st, you need to
19 tell me whether or not you're going to utilize any experts.
20 I'm assuming that's not the case here, because I've yet to see
21 an expert in an FLSA case before me, even though I've been
22 inundated with these cases. I assume that's not a direction
23 you intend to proceed in. Am I wrong about that, counsel?
24          MR. SCHIRRIPA: That's correct, Your Honor.
25          THE COURT: Okay. And Mr. Brady, how about from your

1  end?

2          MR. BRADY:  We would only use an expert if the
3  plaintiff.

4          THE COURT:  All right.  So discovery in this case
5  will end on September 6th pursuant to Judge Wexler's time
6  frames.  At that point, if it turns out that anybody intends to
7  move for a full or partial summary judgment, Judge Wexler does
8  require a premotion conference.  So the deadline to file the
9  letter request for the premotion conference will be September
10 20th.  The joint pretrial order will have to be filed by
11 October 17th.  And then let me see with you a date for the
12 pretrial conference before me, just bear with me for a minute.
13 I'm going to put this on for October 25th at 11:30.  Does that
14 work?  I'm sure you'll all know now what you're doing on
15 October 25th any way.

16          If you have a conflict at some point sufficiently in
17 advance of the conference if you need to change the date, just
18 talk to each other and let me know.  All right?  So that would
19 be October 25th at 11:30.

20          Tell me what else if anything we need to talk about
21 today before we conclude the conference. Anything else you want
22 to address before we finish up?   Mr. Schirripa?

23          MR. SCHIRRIPA:  Not from us, Your Honor, thank you.

24          THE COURT: Okay, Mr. Brady.

25          MR. BRADY:  Thank you, Your Honor.

1  THE COURT:  Okay, thank you both, you know the drill
2  here.  There will be two orders that get posted. We'll get to
3  those as quickly as we can in the next day or two.  And you'll
4  proceed from there.  All right?  Have a good day, have a good
5  evening, and if I don't talk to you in the meantime, I'll see
6  you June 1st.  All right?
7  MR. SCHIRRIPA:  Thank you, Your Honor.
8  MR. BRADY:  Thank you, Your Honor.
9  THE COURT:  Okay.
10                         * * * * *
11                     **C E R T I F I C A T I O N**
12  I, **PATRICIA POOLE**, court approved transcriber,
13  certify that the foregoing is a correct transcript from the
14  official electronic sound recording of the proceedings in the
15  above-entitled matter.
16
17
18  /S/ PATRICIA POOLE
19  TRACY GRIBBEN TRANSCRIPTION, LLC     DATE: January 25, 2016
20
21
22
23
24
25