**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
TIMOTHY TANSKI, on behalf of himself and
all other similarly situation,

                  Plaintiff,

       -against-

AVALONBAY COMMUNITIES, INC.

                  Defendant.
-----------------------------------------------------------X

                       **MEMORANDUM AND**
                           **ORDER**

                        CV 15-6260 (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**     <u>PRELIMINARY STATEMENT</u>

        Plaintiff Timothy Tanski ("Plaintiff") brings this action, individually and on behalf of others

similarly situated, against Defendant AvalonBay Communities, Inc. ("AvalonBay" or "Defendant")

asserting claims for (1) failure to pay overtime wages pursuant to the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201, *et seq.* and New York Labor Law ("NYLL"), and (2) failure to provide

proper wage statements pursuant to NYLL § 195(3).  *See* Complaint ("Compl.") [DE 1].  Presently

before the Court are:  (1) Defendant's motion to dismiss the Complaint, pursuant to Federal Rule of

Civil Procedure 12(b)(6), for failure to state a claim [DE 21]; and (2) Defendant's motion for

reconsideration and/or modification of the Court's January 26, 2015 Case Management and Scheduling

Order ("CMSO") to permit bifurcated discovery and limited depositions [DE 33].  Plaintiff opposes both

motions.  *See* DE 23, DE 35.  Having reviewed the Complaint, the parties' submissions on the motions,

and the applicable case law, the Court DENIES Defendant's motion to dismiss.  Further, Defendant's

motion for reconsideration and/or modification of the CMSO is DENIED, without prejudice.

## II.   BACKGROUND

### A.   Allegations in the Complaint

The following facts are taken from Plaintiff's Complaint and are presumed to be true at this stage

of the proceedings.  *See, e.g., Dejesus v. HG Mgmt. Servs.*, LLC, 726 F.3d 85, 87 (2d Cir. 2013), *cert.*

*denied*, —— U.S. ——, 134 S. Ct. 918 (2014).

Plaintiff is a former employee of AvalonBay and a resident of Suffolk County, New York.

Compl. ¶ 1.  AvalonBay is a Maryland corporation duly organized under the laws of the state of New

York with its principal place of business in Arlington, Virginia.  *Id.* ¶¶ 2, 18.  AvalonBay develops,

owns, operates, and maintains luxury apartment communities in New York and elsewhere throughout

the United States, including California, Connecticut, District of Columbia, Florida, Maryland,

Massachusetts, New Jersey, Rhode Island, Texas, Virginia, and Washington.  *Id.* ¶¶ 2, 19.  AvalonBay

owns multiple properties throughout New York State, including the two properties in Coram, New York

where Plaintiff was employed.  *Id.* ¶ 21.

Plaintiff worked for Defendant as a "Maintenance Supervisor" from March 17, 2014 to May 25,

2015.  *Id.* ¶¶ 3, 13, 28.  Plaintiff was assigned to two of Defendant's properties in Coram, New York:

the Avalon Pines property and the Avalon Charles Pond property (collectively, "the Coram Properties").

*Id.* ¶ 29, 31.  Plaintiff's responsibilities included the day-to-day maintenance of the Coram Properties

and responding to tenant maintenance requests.  *Id.* ¶¶ 14, 32.  At each of the Coram Properties, Plaintiff

supervised a team of approximately seven maintenance employees such as janitors and senior

technicians.  *Id.* ¶¶ 32, 33.

Plaintiff alleges that he was "a salaried, non-exempt full-time employee[] of AvalonBay hired to

work a regular schedule of 40 hours per week."  *Id.* ¶ 38.  Plaintiff worked a regular schedule from 8:00

a.m. to 5:00 p.m., five days per week, with a one-hour, unpaid lunch break each day.  *Id.* ¶ 34.  Plaintiff

recorded his time by using the Defendant's fingerprint system to "clock-in" when he arrived at the Coram Properties and "clock-out" when he left for the day. *Id.* ¶ 35. He also clocked in and out when he took his one-hour lunch break each day. *Id.*

Plaintiff claims that he and other members his maintenance staff "were regularly required to attend staff meetings, training sessions, employee lunches, and other work-related events." *Id.* ¶ 40. These meetings were attended by "Maintenance Supervisors and Technicians assigned to AvalonBay properties other than the Coram Properties," including "Defendant's other properties throughout New York and New Jersey." *Id.* The meetings "were usually held during normal business hours of 8:00 a.m. to 5:00 p.m., Monday through Friday, and could last for several hours depending on the nature of the event." *Id.* ¶ 41. Plaintiff alleges that he and the other employee attendees "would often have to report back to their work locations after the meeting concluded to continue working until 5:00 p.m." *Id.*

Plaintiff asserts that, "[w]hile these meetings were work-related, conducted during business hours, and often mandatory, Defendant improperly labeled the time spent during these meetings as 'Non-Productive' hours." *Id.* ¶ 42. Moreover, Plaintiff was not required to clock in or out in order to record his participation in these meetings. *Id.* ¶ 43. Plaintiff maintains that he was compensated for "[a]ny 'Non-Productive' work exceeding forty hours per week . . . at [his] regular rate of pay of $26.00 per hour, not at his overtime rate of one-and-one-half times his normal pay rate ($39.00 per hour)[.] *Id.* ¶ 44. "In other words, if [Plaintiff] worked forty-five hours in a given work week, and five of those hours were labeled by Defendant as 'Non-Productive' hours, [Plaintiff] would receive $26.00[/hour] pay for all forty-five hours. Defendant did not calculate those extra five hours worked by [Plaintiff] at the required overtime rate of $39.00 per hour." *Id.*[1]

---

[1]     The Complaint also describes two other scenarios in which Plaintiff was paid straight pay rather than overtime wages. Specifically, Plaintiff alleges that, in addition to his regular Monday through Friday work schedule, he was required to be "on call" on certain Sundays to report to work "[i]f a resident had a maintenance request . . . that needed immediate attention." Compl. ¶ 36. Plaintiff's "Call

According to Plaintiff, "Defendant actively schemed to prevent their employees from earning overtime, which was accomplished through Defendant's 'non-productive hours' policy." *Id.* ¶ 45. Specifically, Plaintiff and his co-workers noticed how Defendant "would schedule these 'Non-Productive' meetings/events more frequently during weeks where it looked like the employees' hours were going to exceed forty hours." *Id.* If an employees' hours exceeded forty, Defendant "would have those 'non-productive hours' reserved to off-set any accumulated overtime hours." *Id.* Plaintiff states that he "was never made aware of Defendant's policy concerning 'Non-Productive' hours prior to being hired by AvalonBay" and that the offer letter he received "upon hiring neglected to mention that Defendant would be labeling certain work hours as either productive or non-productive hours, or that non-productive hours would not be eligible for overtime pay." *Id.* ¶ 46.[2]

---

In Pay" was paid at his regular rate of $26.00 per hour. *Id.* Plaintiff also alleges that, twice a week, he was responsible for purchasing supplies at Home Depot before reporting to work in the morning. *Id.* ¶ 37. It took Plaintiff approximately 30 minutes to one hour to retrieve the supplies, "however, this time was not considered part of his work day because it occurred before he officially 'clocked-in' at work." *Id.* Plaintiff alleges that Defendant was aware of this practice but still required Plaintiff to retrieve the supplies before work "without compensating him for this time." *Id.*

[2]      The Complaint alleges that the terms and conditions of Plaintiff's employment are detailed in an offer letter Plaintiff received from AvalonBay Senior Maintenance Manager Kurt M. Rose on February 28, 2014. Compl. ¶ 28; *see* Offer Ltr., annexed to Compl. as Ex. A. According to the Complaint, the offer letter "specifically acknowledges that as a Maintenance Supervisor Plaintiff was entitled to overtime compensation." *Id.* ¶ 28. The letter states, as relevant here:

> Your base rate of pay will be $26.00 per hour and you will be paid on AvalonBay's regular weekly paydays which are Friday. As this is a "non-exempt position," you will be entitled to receive additional overtime compensation for all time worked beyond your regularly scheduled hours. Overtime hours, which must be directed or approved in advance by your manager, are paid at the rate of $39.00 per hour, which rate is equal to one and one-half (1 ½) times your regular hourly rate, for all time worked in excess forty hours in any work week.

*Id.*; Offer Letter, Ex. A., Compl.

Plaintiff became aware of Defendant's non-productive hours policy upon reviewing his paycheck, which "specifically listed separate 'Earnings' categories for 'Non-Productive Hours' and 'Overtime.'  Any time labeled as 'Non-Productive Hours' was assigned a regular rate of pay whether or not [Plaintiff]'s total hours worked for that week exceeded forty hours."  *Id.* ¶47.  The Complaint includes the following example of how Defendant categorized Plaintiff's paycheck:

| Earnings | Rate | Hours |
|---|---|---|
| Regular | 26.00 | 40.00 |
| Overtime | 39.00 | 0.75 |
| Non-Productive Hours | 26.00 | 8.00 |
| **Total**: | | 48.75 |

*Id.* ¶ 48.

Plaintiff also attached paystubs to the Complaint for the weeks of April 6, 2014, September 21, 2014, October 19, 2014, and February 22, 2015.  *Id.*; *see* Paystubs, annexed to Compl. as Ex. B.  These paystubs contain the following information:

| Week of April 6, 2014 | | |
|---|---|---|
| Earning | Pay Rate | Hours Worked |
| Regular | 26.00 | 38.50 |
| Overtime | | |
| Non-Productive Hours | 26.00 | 2.00 |
| **Total Hours Worked**: | | **40.50** |

| Week of September 21, 2014 | | |
|---|---|---|
| Earning | Pay Rate | Hours Worked |
| Regular | 26.00 | 40.00 |
| Overtime | 39.00 | 0.75 |
| Non-Productive Hours | 26.00 | 8.00 |
| **Total Hours Worked**: | | **48.75** |

| Week of October 19, 2014 | | |
|---|---|---|
| Earning | Pay Rate | Hours Worked |
| Regular | 26.00 | 33.75 |
| Call-In Pay | 26.00 | 3.50 |
| Non-Productive Hours | 26.00 | 8.00 |
| **Total Hours Worked**: | | **45.25** |

| Week of April 6, 2014 | | |
|---|---|---|
| **Earning** | **Pay Rate** | **Hours Worked** |
| Regular | 26.00 | 37.00 |
| Call-In Pay | 26.00 | 2.00 |
| Non-Productive Hours | 26.00 | 3.00 |
| **Total Hours Worked**: | | **42.00** |

Paystubs, Ex. B, Compl.

Plaintiff alleges that "AvalonBay is aware that the Plaintiff and members of the putative class regularly work uncompensated overtime, which the Company improperly labels as 'non-productive hours.'"  *Id.* ¶ 50.  According to Plaintiff, his supervisor explained to him that Defendant "determined what type of work would be considered 'non-productive.'"  *Id.* ¶ 49.  Furthermore, Plaintiff and other maintenance workers, "including workers assigned to different AvalonBay properties in New York and New Jersey at AvalonBay, discussed [Defendant]'s 'non-productive hours' policy on many occasions." *Id.*  Plaintiff states that he and his co-workers "would often complain about how they were being shorted overtime compensation because of this 'Non-Productive' classification."  *Id.*

Based on the foregoing allegations, the Complaint asserts claims against Defendant for unpaid overtime compensation in violation of the FLSA and the NYLL.  *See id.* ¶¶ 51-93.  Plaintiff brings his FLSA overtime claims as a putative collective action, pursuant to 29 U.S.C. § 216(b), and his NYLL claims as a putative class action under Fed. R. Civ. P. 23, on behalf of all "[c]urrent and former non-exempt employees of Defendant who perform or performed work in any of Defendant's locations in excess of forty (40) hours which was classified as 'Non-Productive Hours.'"  *Id.* ¶¶ 51, 65.[3]  Plaintiff alleges that Defendant treated the putative collective action and class action members similarly through

---

[3]     Plaintiff's proposed time period for his class allegations is "October 30, 2009 to the date of final judgment in this matter."  Compl. ¶ 65.

their "practice" of "requiring them to work in excess of forty (40) hours per work week without adequate overtime compensation for all hours worked including 'non-productive hours.'"  *Id.* ¶ 53.[4]

Plaintiff further alleges that Defendant failed to provide him and other similarly situated putative class members with "true and accurate time and pay records for all hours worked," in violation of NYLL § 195(3).  *Id.* ¶ 69(d).  Specifically, Plaintiff asserts that:

> Defendant has willfully failed to furnish the Named Plaintiff and members of the Rule 23 class with statements with every payment of wages as required by NYLL, Article 6, § 195(3), listing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.

*Id.* ¶ 95; *see id.* ¶ 96.

### B.      Relevant Procedural History

Plaintiff commenced this action on October 30, 2015.  DE 1.  At that time, the case was assigned to Judge Wexler as District Judge and the undersigned Magistrate Judge.  *See* 11/2/15 Elec. Order.

On November 30, 2015, Defendants submitted a letter to Judge Wexler seeking leave to file a motion to dismiss the Complaint pursuant to Rule 12(b)(6).  DE 9.  Plaintiff opposed this request.  DE 11.  On December 4, 2015, Judge Wexler waived his pre-motion conference requirement and granted Defendants leave to move to dismiss the Complaint pursuant to a proposed briefing schedule, which was approved on December 14, 2015.  *See* 12/4/15 Elec. Order; 12/14/15 Elec. Order.

---

[4]      Plaintiff's collective action and class action allegations are limited to Defendant's alleged practice of failing to pay overtime for all non-productive hours worked in excess of 40 hours per week.  *See* Compl. ¶¶ 51-93.  Although Plaintiff alleges that Defendant failed to pay him overtime wages for "call-in" hours and for time spent on trips to Home Depot before clocking in, *see id.* ¶¶ 36-37, Plaintiff does not make these allegations on behalf of the putative collective action and class members.  *See id.* ¶¶ 51-93.

The parties filed their proposed Initial Case Management and Scheduling Order on January 8, 2016 prior to the January 12, 2016 Initial Conference. DE 18. In that submission, Defendants proposed that discovery be bifurcated as follows:

> Phase I discovery is to be limited to evidence to support or oppose the case proceeding as a collective and/or class action. Phase II discovery will be addressed following the Court's disposition of Plaintiff's motion for conditional certification of a collective action under Section 216(b) of the FLSA and Plaintiff's Fed. R. Civ. P. 23 class certification motion.

*Id.* ¶ 1.A. Plaintiff opposed this request on the grounds that, *inter alia*, bifurcated discovery would "unduly delay conditional certification of the collective action," "prejudice potential opt-in plaintiffs as the statute of limitations continues to run," and "require[] multiple depositions of the same witnesses during Phases I and II." *Id.*

During the January 12, 2016 Initial Conference, the Court denied Defendants' application to bifurcate discovery. 1/12/16 Civil Conference ("CCMO") ¶ 3. The Court noted that Judge Wexler does not bifurcate discovery and that Defendants' counsel was "free to take up the issue with Judge Wexler directly if he chooses." *Id.*; *see* Trans. of 1/12/16 Initial Conference [DE 26], at 2:20-3. Accordingly, the Court proceeded to implement a Case Management and Scheduling Order ("CMSO") which "complies with Judge Wexler's practices regarding discovery." 1/12/16 CCMO ¶ 1. The Court also noted that Judge Wexler "has a nine-month trial-ready rule which precludes extensions of discovery deadlines" and that "[c]ounsel should therefore take steps to insure that they are in compliance with the respective deadlines set forth in the CMSO." *Id.* ¶ 2. On January 15, 2016, the Court entered the CMSO setting September 6, 2016 as the deadline for the completion of all discovery. *See* DE 20.

On January 19, 2016, the parties interposed a consent to the jurisdiction of a United States Magistrate Judge for all purposes, pursuant to 28 U.S.C. § 636(c). DE 24. That same day, Defendant filed a fully briefed motion to dismiss the Complaint. *See* DE 21-DE 23. On January 20, 2016, Judge

Wexler "so ordered" the consent form and this matter was transferred to this Court for all further proceedings. *See* DE 25.

On January 29, 2016, Defendant filed a letter motion seeking leave to file a formal motion under the Federal Rules for the Court to reconsider and/or modify the January 15, 2016 CMSO "to provide for bifurcated discovery." DE 27. The Court held a telephone conference on February 4, 2016 to discuss Defendant's application. *See* DE 31. After conferring with the parties, the Court directed Defendant's counsel to proceed with the proposed motion in accordance with the agreed-upon briefing schedule set forth in his application. *Id.* Defendant's motion for amendment and/or reconsideration of the January 15, 2016 CMSO was fully briefed and filed on ECF on February 19, 2016. *See* DE 33-DE 36.

While Defendant's motions were pending, Plaintiff moved for conditional certification of a collective action pursuant to 29 U.S.C. § 216(b) of the FLSA. DE 44. Defendant opposes the motion, which remains *sub judice* before the Court. *See* DE 48. To date, Plaintiff has filed a Consent to Join form on behalf of one opt-in plaintiff, Diego Santander ("the Opt-In Plaintiff"). *See* DE 32.

In anticipation of the June 1, 2016 Discovery Status Conference, the parties filed separate status reports on May 26, 2016 and May 27, 2016. *See* DE 51, DE 52. The parties represented, as relevant here, that they had reached an impasse regarding the scope of discovery in this matter prior to the Court's disposition of the Defendant's motion to dismiss the complaint, motion for reconsideration and/or modification of the January 15, 2016 CMSO, and Plaintiff's motion for conditional certification. *See id.* Specifically, "the parties disagree as to whether merits discovery at this stage extends to all current and former maintenance employees in the 12 states and the District of Columbia at 257 properties operated by Defendant, or is limited to the Coram, New York properties at which Plaintiff Tanski and Opt-In Santander were employed." DE 51.

On May 27, 2016, the Court postponed the Discovery Status Conference "until the pending motions have been decided."  5/27/16 Elec. Order.  The Court thereafter granted the parties' joint request to hold the deadlines in the January 15, 2016 CMSO "in abeyance pending the Court's rulings on the outstanding motions in this case, including Plaintiff's motion for conditional certification." 8/30/16 Elec. Order.

## III.   MOTION TO DISMISS THE COMPLAINT

Defendant moves pursuant to Rule 12(b)(6) to dismiss Plaintiff's Complaint for failure to state a claim for (1) violations of the FLSA and NYLL based on Defendant's alleged failure to pay overtime for non-productive hours,[5] and (2) Defendant's alleged failure to provide accurate wage statements pursuant to NYLL § 195(3).  *See* Defendant AvalonBay's Memorandum of Law In Support of its Motion to Dismiss the Complaint for Failure to State a Claim ("Def.'s Mem.") [DE 21-1], at 9-16.  For the reasons explained below, Defendant's motion to dismiss is DENIED.

### A.   Standard of Review

When deciding a Rule 12(b)(6) motion to dismiss, the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the non-moving party.  *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).  "It is well settled that in ruling on such a motion, a district court may consider 'the facts as asserted within the four corners of the complaint' together with 'the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'"  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (quoting *McCarthy v. Dun &*

---

[5]     Defendant notes that, to the extent Plaintiff asserts an "individual claim for unpaid wages" based on "off-the-clock work that he allegedly performed . . . purchasing supplies at Home Depot" as described in paragraph 37 of the Complaint, Defendant is not moving to dismiss this claim.  Def.'s Mem. at 1 n.1 (internal quotation marks omitted).

*Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)); *see, e.g.*, *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must satisfy "a flexible 'plausibility standard.'"  *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555).

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) by setting forth a two-pronged approach to be utilized in analyzing a motion to dismiss.  District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679; *see id.* at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).  Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.*  Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a [d]efendant has acted unlawfully." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

**B.      FLSA and the NYLL Overtime Claims**

Defendant argues that Plaintiff's FLSA and NYLL overtime claims must be dismissed because Plaintiff's allegations do not meet the pleading standards articulated in a trio of recent cases from the Second Circuit: *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013), *Nakahata v. New York–Presbyterian Healthcare*, 723 F.3d 192 (2d Cir. 2013), and *Dejesus v. HG Mgmt. Servs.*, LLC, 726 F.3d 85 (2d Cir. 2013). *See* Def.'s Mem. at 6-15. Specifically, Defendant asserts that Plaintiff has not pleaded facts sufficient to show that "in any given workweek, his allegedly improperly classified non-productive hours added to his regular work hours (in the same work week) to equal more than 40 hours." *Id.* at 9. Plaintiff opposes the motion, arguing that he has satisfied the Second Circuit's pleading standards by attaching paystubs to the Complaint from four workweeks "during which he worked more than 40 hours and did not receive overtime compensation." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss for Failure to State a Claim ("Pl.'s Opp'n") [DE 23], at 9.

**1.      *Applicable Legal Standards***

The FLSA "mandates that an employee engaged in interstate commerce be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata*, 723 F.3d at 200 (citing 29 U.S.C. § 207(a) (2006)). "The relevant portions of New York Labor Law do not diverge from the requirements of the FLSA," and the pleading standards for FLSA overtime claims "apply equally to . . . NYLL state law claims." *Dejesus*, 726 F.3d at 89 n.5 (internal alterations and quotation marks omitted); *see Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d

460, 465 n.2 (E.D.N.Y. 2015) ("Overtime claims under the FLSA and NYLL are subject to the same standards.") (citing *Dejesus*, 726 F.3d at 89 n.5).

In *Lundy*, the Second Circuit first addressed the "degree of specificity needed to state an overtime claim under the FLSA." 711 F.3d at 114. The court in *Lundy* wrote that "to survive a motion to dismiss, Plaintiffs must allege sufficient factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours." *Id.* Noting "the degree of specificity needed to state an overtime claim under the FLSA" was a question of first impression, the court provided the following benchmark: "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *See id.* (citing 29 U.S.C. § 207(a)(1)). In affirming dismissal of the complaint, the *Lundy* court found "no plausible claim that [the] FLSA was violated, because Plaintiffs have not alleged a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours." *Id.* For example, one of the plaintiffs alleged that she "was 'typically' scheduled to work three shifts per week, totaling 37.5 hours." *Id.* Although the plaintiff had alleged that she "occasionally" worked in excess of forty hours, "how occasionally or how long, she does not say; nor does she say that she was denied overtime pay in any such particular week." *Id.* at 114–15. Another plaintiff similarly failed to allege "that she was denied overtime pay in a week where she worked . . . additional shifts." *Id.* at 115. The Second Circuit explained that allegations regarding "typical" practices fall short of the requisite specificity because such claims "invite[ ] speculation" as to whether the plaintiff worked more than forty hours in any given week. *Id.* The Second Circuit therefore affirmed the dismissal of the plaintiffs' FLSA overtime claims. *Id.*

In *Nakahata*, the Second Circuit reiterated the standard articulated in *Lundy*, affirming dismissal of overtime claims in which the plaintiffs "merely alleged that they were not paid for overtime hours

worked." 723 F.3d at 201.  The Second Circuit explained that the plaintiffs' perfunctory allegations that they were not compensated for work performed during meal breaks, before and after shifts, or during required trainings "raise the possibility that Plaintiffs were undercompensated in violation of the FLSA and NYLL; however, absent any allegation that Plaintiffs were scheduled to work forty hours in a given week, these allegations do not state a plausible claim for such relief." *Id.*  The court in *Nakahata* therefore held that the "Plaintiffs failed to plead sufficient facts to make it plausible that they worked uncompensated hours in excess of 40 in a given week." *Id.*

Finally, in *DeJesus*, the Second Circuit affirmed dismissal of a claim for FLSA overtime where the plaintiff "provided less factual specificity than did the plaintiffs in *Lundy* or *Nakahata*" in that "[s]he did not estimate her hours in any or all weeks or provide any other factual context or content." 726 F.3d at 89.  Rather, the plaintiff "alleged only that in 'some or all weeks' she worked more than 'forty hours' a week without being paid '1.5' times her rate of compensation," and thus "no more than rephras[ed] the FLSA's formulation specifically set forth in section 207(a)(1)." *Id.* (citation omitted).  The Second Circuit clarified:  "*Lundy*'s requirement that plaintiffs must allege overtime without compensation in a 'given' workweek, was not an invitation to provide an all-purpose pleading template alleging overtime in 'some or all workweeks.'" *Id.* at 90 (citation omitted).  The pleading standard was instead "designed to require plaintiffs to provide some factual context that will 'nudge' their claim 'from conceivable to plausible.'" *Id.* (citing *Twombly*, 550 U.S. at 570).  To satisfy this standard, plaintiffs are not required to "keep careful records and plead their hours with mathematical precision"; however, the standard requires that plaintiffs provide "complaints with sufficiently developed factual allegations." *Id.*

"The most salient corollary from the *Lundy–Nakahata–Dejesus* triumvirate is that an FLSA plaintiff must provide a certain degree of specificity as to uncompensated hours worked during a

*particular week.*"  *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 196 (E.D.N.Y. 2015) (emphasis in original).  As the court explained in *Chime*:

> This is reflected in the pivotal passages from each case.  *Lundy* wrote that "a plaintiff must sufficiently allege 40 hours of work in a *given workweek* as well as some uncompensated time in excess of the 40 hours," 711 F.3d at 114, and *Nakahata* provided that "absent any allegation that Plaintiffs were scheduled to work forty hours *in a given week*, these allegations do not state a plausible claim for such relief . . . . Plaintiffs must provide sufficient detail  . . . to support a reasonable inference that they worked more than forty hours in a given meek." 723 F.3d at 201.  *Dejesus* explained that the claims in *Lundy* failed "because of arithmetic:  tallying the plausible factual allegations, we could not get beyond forty hours in any *given week*," 726 F.3d at 88–89, and the *Nakahata* complaint was deficient in that it lacked "any allegation that Plaintiffs were scheduled to work forty hours in a given week."  *Id.* at 89 (quoting *Nakahata*, 723 F.3d at 201) (all emphases added).

*Id.* at 196-97 (emphasis in original).  With this guidance, the Court considers whether Plaintiff's overtime claims have been pleaded with sufficient particularity.

### 2.    *Analysis*

As noted, Defendant argues that the Complaint falls short of the pleading standards announced in *Lundy*, *Nakahata*, and *Dejesus* because it does "does not plead facts demonstrating that, in any given workweek, his alleged improperly-classified non-productive hours added to his regular work hours (in the same workweek) to equal more than 40 hours."  Def.'s Mem. at 9.  Plaintiff disputes this contention and points to the four pay stubs referenced in and attached to the Complaint, which he asserts identify "four, specific workweeks . . . during which he worked more than 40 hours and did not receive overtime compensation."  Pl.'s Opp'n at 9.

Considering the allegations in the Complaint (and the documents attached to it) as true and in the light most favorable to Plaintiff, the Court is satisfied that the facts supporting Plaintiff's overtime claims have been pleaded with the specificity required by the *Lundy* line of cases.  Plaintiff challenges Defendant's practice of not paying overtime compensation for all "non-productive hours" which

Plaintiff and the putative members worked in excess of 40 hours per week. *See* Compl. ¶¶ 51-53, 60, 65. Plaintiff alleges that, on top of his "regular" 40-hour-per week schedule, he and his maintenance staff – as well as maintenance employees from Defendant's other properties in New York and New Jersey – were "regularly required to attend staff meetings, training sessions, employee lunches, and other work-related events." *Id.* ¶ 40. These meetings "were work-related, conducted during business hours, and often mandatory." *Id.* ¶ 42. Plaintiff alleges that "Defendant improperly labeled the time spent during these meetings as 'Non-Productive' hours," and that he was compensated at "[his] regular rate of pay of $26.00 per hour" for all 'Non-Productive' hours he worked in excess of 40 hours per week, rather than "his overtime rate of one and one half times his normal pay rate ($39.00 per hour)[.]" *Id.* ¶¶ 42, 44; *see id.* ¶ 47 ("Any time labeled as 'Non-Productive Hours' was assigned a regular rate of pay whether or not [Plaintiff]'s total hours worked for that week exceeded forty hours.").

To support these allegations, Plaintiff has provided paystubs from the weeks of April 6, 2014, September 21, 2014, October 21, 2014, and February 22, 2015. *Id.* ¶ 48; *see* Paystubs, Ex. B., Compl. As Plaintiff points out in his opposition to the motion to dismiss, these paystubs identify four workweeks in which Plaintiff (1) worked more than 40 hours a week, and (2) was not paid overtime for the non-productive hours he worked in excess of 40 hours. *See* Pay Stubs, Ex. B, Compl. For example, the paystub for the week of April 6, 2014 shows that Plaintiff worked 38.50 "Regular" hours and 3.0 "Non-Productive Hours," and was paid at his standard rate of pay for a total of 41.50 hours that week. *Id.* Similarly, for the week of September 21, 2014, Plaintiff worked 40.00 "Regular" hours, 0.75 "Overtime" hours, and 8.0 "Non-Productive Hours," and was paid at his standard rate of pay for the combined 48.00 hours of "Regular" and "Non-Productive" work. *Id.* For the week of February 22, 2015, Plaintiff worked 33.75 "Regular" hours, 3.50 "Call In Pay" hours, and 8.0 "Non-Productive

Hours," and was paid at his standard rate of pay for the combined 41.75 hours of "Regular" and "Non-Productive" work.  *Id.*

Under the *Lundy* trio of cases, the Second Circuit "concluded that 'in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege ***40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.***'"  *Dejesus*, 726 F.3d at 88 (quoting *Lundy*, 711 F.3d at 114) (emphasis supplied).  As courts in this Circuit have since observed, all that is required under *Lundy* and its progeny is "[a] blend[ of] enough specific facts—the hours worked, the hours paid, the rate of pay, the employment practices at issue, and so forth—to make plausible the existence of at least one given work week of more than forty hours."  *Anjum v. J.C. Penney Co.*, No. 13-CV-0460, 2014 WL 5090018, at *17 (E.D.N.Y. Oct. 9, 2014); *see, e.g.*, *Humphrey v. Rav Investigative & Sec. Servs. Ltd.*, No. 12-CV-3581, 2016 WL 1049017, at *5 (S.D.N.Y. Mar. 11, 2016) ("[A] successful FLSA overtime claim must be based on 'sufficient factual allegations rather than a general and conclusory allegation as to the number of hours routinely worked—whereby the Court can reasonably infer that there was indeed one or more particular workweek(s) in which the plaintiff suffered an overtime violation.") (quoting *Bustillos v. Acad. Bus, LLC*, No. 13-CV-565, 2014 WL 116012, at *4 (S.D.N.Y. Jan. 13, 2014)) (internal quotation marks and alterations omitted); *Chime*, 137 F. Supp. 3d at 196 ("[A]n FLSA plaintiff must provide a certain degree of specificity as to uncompensated hours worked during *a particular week*.") (emphasis in original).  Moreover, a court may properly consider paystubs and other documents attached to the complaint in determining whether a plaintiff has adequately pleaded the "forty hour threshold."  *Cowell v. Utopia Home Care, Inc.*, 144 F. Supp. 3d 398, 405 (E.D.N.Y. 2015) (finding the complaint at issue "distinguishable from those in *Lundy* and *Nakahata*" where the plaintiff "alleges that she regularly worked over fifty hours a week, which is supported by the pay stubs attached

to the complaint reflecting 56 hour work weeks"); *see generally Kone v. Joy Constr. Corp.*, No. 15-CV-1328, 2016 WL 866349, at *2 (S.D.N.Y. Mar. 3, 2016).

In light of the applicable case law, the Court finds that, considering (1) Plaintiff's allegations that he regularly worked 40 hours per week and was not paid overtime compensation for any non-productive hours he worked beyond 40 hours, along with (2) the paystubs showing four "example" weeks when Plaintiff was not paid overtime for the non-productive hours worked beyond 40 per week, Plaintiff has provided "the precise specificity . . . mandated by *Lundy* and its progeny – namely, that he "work[ed] in excess of forty hours in *a given work week.*" *Chime*, 137 F. Supp. 3d at 197 (emphasis in original) (denying motion to dismiss overtime claims where the complaint provided examples of weeks where the plaintiff worked six or more eight-hour shifts); *Morales v. Rochdale Vill. Inc.*, No. 15-CV-502, 2015 WL 6442590, at *3 (E.D.N.Y. Oct. 23, 2015) (holding that "plaintiff's specific examples from the week of January 6, 2014, combined with her allegations regarding her regularly scheduled forty hour work week, are sufficient to 'nudge' plaintiff's overtime claim 'from conceivable to plausible'"); *Cowell*, 144 F. Supp. 3d at 405 (finding *Lundy* standard satisfied where the complaint alleged that the plaintiff "regularly worked over fifty hours a week" and those allegations were "supported by the pay stubs attached to the complaint reflecting 56 hour work weeks"). Accordingly, the Court finds that Plaintiff's Complaint "me[ets] the specificity requirement established by Second Circuit jurisprudence." *Chime*, 137 F. Supp. 3d at 198.

Although Defendant's motion is predicated on Plaintiff's failure to meet the Second Circuit's pleading requirements, Defendant does not actually dispute that Plaintiff's non-productive hours "contribute to reaching the forty hour threshold" set by *Lundy* and its progeny. *Cowell*, 144 F. Supp. 3d at 405. In fact, Defendant points out in its motion that, according to the four example paystubs attached to the Complaint, Plaintiff worked approximately 22 non-productive hours over the four weeks, 18 hours

of which "could be added to his other work hours to exceed 40 hours in a workweek." Def.'s Mem. at 9. *Id.* Rather, the real issue Defendant raises here "is whether the allegations sufficiently state a claim for (overtime) wages due for" the non-productive hours Plaintiff worked. *Cowell*, 144 F. Supp. 3d at 405. In particular, Defendant asserts that the Complaint fails to state a claim because (1) Plaintiff has not adequately alleged that the work he performed during the non-productive hours was compensable as overtime, and (2) the Complaint merely recites the statutory language of the FLSA and NYLL "without adding any supporting facts[]." Def.'s Mem. at 9-14.

The Court finds Defendant's arguments unpersuasive. As noted above, Plaintiff alleges that he was "regularly required to attend staff meetings, training sessions, employee lunches, and other work-related events," which Defendant classified as non-productive hours, and for which he was not paid the required time-and-a-half for any non-productive hours he worked in excess of 40 hours per week. *See* Compl. ¶¶ 40, 42, 44. Plaintiff has also provided paystubs from four weeks in which he was not paid overtime wages for any non-productive hours worked beyond 40 per week. *See* Pay Stubs, Ex. B, Compl. Although the Complaint does not specifically allege that Plaintiff attended mandatory "staff meetings, training sessions, employee lunches, and other work-related events" during the four example weeks, Compl. ¶ 40, the Court may plausibly infer this fact by construing the pleadings in the light most favorable to Plaintiff. *See generally Chime*, 137 F. Supp. 3d at 198 n.8 (stating that "the court may reasonably infer non-payment during the work weeks specifically pled, based on the general allegations that the defendants failed to pay overtime throughout the Class and Collective Action period"); *Morales*, 2015 WL 6442590, at *3 (noting that the "plaintiff provides examples of two improper wage and hour practices that operated together to deprive her of compensation for fifty-two minutes of work during the week of January 6, 2014," and holding that "[a]lthough the Court must infer that plaintiff worked her

scheduled forty hours during this week, this inference is not unduly speculative") (internal quotation marks omitted).

Taking Plaintiff's allegations "as true, the Court finds that they sufficiently state a claim that Plaintiff was entitled to overtime for those hours worked." *Cowell*, 144 F. Supp. 3d at 405. Defendant disputes that Plaintiff was entitled to overtime compensation for attending "staff meetings, training sessions, employee lunches, and other work-related events." Def.'s Mem. at 10-13. However, Defendant has not presented the Court with any case law or other authority which demonstrates that hours spent on such activities are categorically excluded for purposes of calculating overtime. *See id.* At best, Defendant's submissions raise a question whether, under the circumstances presented in this case, Plaintiff should have been paid overtime wages for the non-productive hours beyond 40 hours per week which were spent at "staff meetings, training sessions, employee lunches, and other work-related events." Compl. ¶ 40. Such a question is not appropriate on a motion to dismiss – where the Court must construe the allegations in Plaintiff's favor and presume them to be true – and must address such issues after the completion of discovery on a motion for summary judgment or at trial. Moreover, contrary to Defendant's suggestion, the Court finds that Plaintiff's Complaint does more than merely "parrot" the statutory language of the FLSA and NYLL, and instead provides "provid[es] . . . sufficiently developed factual allegations" which plausibly state a claim for overtime violations. *Dejesus*, 726 F.3d at 90; *see* Def.'s Mem. at 14-15.

For the foregoing reasons, the Court concludes that Plaintiff's Complaint sufficiently states a claim for failure to pay overtime compensation under the FLSA and the NYLL. Accordingly, Defendant's motion to dismiss Plaintiff's overtime claims is DENIED.

C.     **Failure to Furnish Proper Wage Statements**

Defendant also moves to dismiss Plaintiff's third cause of action for failure to provide proper wage statements pursuant to NYLL § 195(3).  *See* Def.'s Mem. at 15-16.  Defendant argues that because "the Complaint does not allege facts demonstrating any weeks in which Plaintiff allegedly worked misclassified non-productive hours that resulted in an underpayment or non-payment of overtime hours," Plaintiff likewise "has not identified any specific workweeks in which his wage statement underreported his overtime hours due to the alleged misclassification [of] his 'non-productive' hours." *Id.*  Thus, Defendant asserts that "Plaintiff's claim for inaccurate wage statements . . . has not been sufficiently pled." *Id.* at 16.  Plaintiff disagrees, arguing that his "alleg[ations] that Defendant did not keep accurate records of 'non-productive time,' and inaccurately listed non-productive time on its pay statements" adequately state a claim for violation of NYLL § 195(3).  Pl.'s Opp'n at 11.

NYLL § 195(3) "requires that employers provide a 'statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details.'"  *Kone*, 2016 WL 866349, at *5 (quoting *Canelas v. A'Mangiare, Inc.*, No. 13-CV-3630, 2015 WL 2330476, at *5 (S.D.N.Y. May 14, 2015)); *see, e.g.*, *Cortez v. 8612 Best Coffee Shop Inc.*, No. 13-CV-3095L, 2015 WL 10709830, at *8 (E.D.N.Y. Aug. 14, 2015), *report and recommendation adopted*, 2016 WL 1559148 (E.D.N.Y. Apr. 18, 2016).  For employees who are not exempt from overtime compensation, the wage statement "shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."  N.Y. Lab. Law § 195(3) (McKinney 2014).  This means that "the 'number of overtime hours' that appears on the wage statement should include every hour actually 'worked' by the employee."  *Copper*, 132 F. Supp. 3d at 468 (quoting N.Y. Lab. Law § 195(3)).

In *Copper*, the plaintiff alleged that the "defendants failed to comply with § 195(3) because defendants failed to furnish . . . accurate wage statements." *Id.* at 467 (internal quotation marks omitted). The defendants appended wage statements to their motion to dismiss which "demonstrate[d] that they furnished documentation containing the categories required by the statute," and that "[t]he wage statements separately list[ed] the number of regular and overtime hours worked and the rate of compensation for each." *Id.* However, the plaintiffs argued that these wage statements did not satisfy the requirements of NYLL § 195(3) because the defendants "did not account for overtime hours plaintiffs allegedly worked off-the-clock. Therefore, according to the complaint, the furnished wage statements d[id] not accurately state 'the number of overtime hours worked.'" *Id.* (quoting NYLL § 195(3)).

The court in *Copper* agreed with the plaintiffs. *Id.* at 467-68. Specifically, the court stated that "[t]he plain language of § 195(3) requires wage statements furnished to employees to include a statement of 'the number of overtime hours *worked*'" and, "[a]ccordingly, the 'number of overtime hours' that appears on the wage statement should include every hour actually 'worked' by the employee." *Id.* at 468 (quoting NYLL § 195(3)) (emphasis in original). The court in *Copper* also determined, upon reviewing the legislative history of NYLL § 195(3), that "the New York legislature did not intend for inaccurate statements of overtime hours to satisfy the [statute]'s wage-notice requirements." *Id.* Thus, the court held that the plaintiffs "adequately pled a § 195(3) violation by alleging that defendants 'maintained inaccurate time records' and paid them 'according to these inaccurate time records, and not the hours . . . *actually worked*." *Id.* (emphasis in original).

Here, the Complaint alleges that Defendant willfully failed to furnish Plaintiff and the putative class members with wage statements which accurately set forth, *inter alia*, "the number of regular hours and overtime hours worked." Compl. ¶ 95. In particular, the Complaint states that Defendant

improperly "categorized" the earnings listed in Plaintiff's paychecks by, *inter alia*, designating certain hours as "non-productive hours" rather than "overtime hours."  *See id.* ¶¶ 46-48.  Plaintiff has also provided paystubs as examples of this alleged practice.  *See* Pay Stubs, Ex. B, Compl.

The Court finds the foregoing allegations sufficient to state a claim for inaccurate wage statements under NYLL § 195(3).  Contrary to Defendant's contentions, the Court ***does*** find that the Complaint adequately describes specific weeks when Plaintiff "allegedly worked misclassified non-productive hours that resulted in an underpayment or non-payment of overtime hours[.]"  Def.'s Mem. at 15.  However, the Court notes that, unlike *Copper*, Plaintiff does not allege that the overtime hours he "actually worked" are not reflected on the paystubs in any form.  *See Copper*, 132 F. Supp. 3d at 467-68.  Rather, he asserts that his overtime hours have been "miscategorized" as "non-productive hours" when they should have been categorized as "overtime hours."  *See* Compl. ¶¶ 46-48, 95.  The Court nevertheless finds such allegations are sufficient to plead a violation of NYLL § 195(3) based on Defendant's "maintain[ing] inaccurate time records" and paying Plaintiff and the putative class members "according to the[] inaccurate time records," rather than for the overtime hours they "*actually worked*."  *Copper*, 132 F. Supp. 3d at 468 (emphasis in original).

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's cause of action for failure to provide proper wage statements pursuant to NYLL § 195(3) is DENIED.

## IV.   MOTION FOR RECONSIDERATION AND/OR MODIFICATION OF THE CMSO

Defendant has also filed a motion requesting "reconsideration and modification" of the Court's January 15, 2015 CMSO.  *See* DE 33.  Specifically, Defendant seeks to modify the pre-trial deadlines in the CMSO to permit (1) the bifurcation of discovery into two phases, the first addressing "evidence to support or oppose the case proceeding as a collective and/or class action," and the second addressing discovery which remains after the Court decides the motion for collective action certification; and

(2) depositions of the declarants submitting statements in support of and in opposition to Plaintiff's

motion for conditional certification.  DE 33-1.  Plaintiff opposes this request in its entirety.  *See* DE 35.

    After Defendant filed the instant motion, Plaintiff's motion for conditional certification was fully

briefed and filed on ECF.  *See* DE 44-48.  Moreover, on August 30, 2016, the Court granted the parties'

joint application to hold the deadlines in the January 15, 2016 CMSO "in abeyance pending the Court's

rulings on the outstanding motions in this case, including Plaintiff's motion for conditional certification."

8/30/16 Elec. Order.

    Having considered the foregoing procedural history as well the parties' submissions, the Court

sees no reason at this time to bifurcate discovery, which the Court has stayed pending its resolution of

the now-pending motion for conditional certification.  Nor is the Court inclined to lift the stay of

discovery currently in place to permit any depositions.

    Accordingly, Defendant's motion for reconsideration and/or modification is DENIED, without

prejudice, and with the right to renew once the Court has decided the pending motion for conditional

certification.

**V.    CONCLUSION**

    Accordingly, Defendant's motion to dismiss the Complaint [DE 21] is DENIED, with prejudice,

and Defendant's motion for reconsideration and/or modification of the CMSO [DE 33] is DENIED,

without prejudice, and with the right to renew in accordance with this Memorandum and Order.


                                    **SO ORDERED.**

Dated: Central Islip, New York
       September 30, 2016


                                    /s/ A. Kathleen Tomlinson

                                    A. KATHLEEN TOMLINSON
                                    U.S. Magistrate Judge