**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
TIMOTHY TANSKI, on behalf of himself and
all others similarly situated,

       Plaintiff,

   -against-          **MEMORANDUM**
                **AND ORDER**

               CV 15-6260 (AKT)

AVALONBAY COMMUNITIES, INC.

       Defendant.
-----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**  **PRELIMINARY STATEMENT**

   Timothy Tanski ("Tanski" or "Plaintiff") filed this putative collective action on behalf of

himself and all others similarly situated against AvalonBay Communities, Inc. ("AvalonBay" or

"Defendant") to recover damages and other legal and equitable relief for purported violations of

the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. § § 201 et seq., and the New

York State Labor Law, as amended by the Wage Theft Prevention Act. *See generally* Complaint

("Compl.") [DE 1].  Plaintiff has filed a Fair Labor Standards Act Consent to Join form

completed by Diego Santander [DE 32] and now moves for Conditional Certification and Court-

Authorized Notice Pursuant to Section 216(b) of the FLSA and for Expedited Discovery.  DE 46.

For the reasons that follow, the motion is GRANTED in part, and DENIED in part.

**II.**  **BACKGROUND**

   **A.**  **Plaintiffs' Motion for Conditional Certification**

   The following alleged facts are taken from (1) the Amended Complaint filed on

October 30, 2015 [DE 1], (2) the Memorandum of Law in Support of Plaintiffs' Motion for

Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA and for Expedited Discovery ("Pls.' Mem.") [DE 45], and (3) the declarations submitted by named Plaintiff Timothy Tanksi [46-1] and opt-in Plaintiff Diego Santander [46-2].

Plaintiff Tanski is a former employee of AvalonBay and a resident of Suffolk County, New York.  Compl. ¶ 1; Pls.' Mem. at 2.  AvalonBay is a Maryland corporation duly organized under the laws of the state of New York with its principal place of business in Arlington, Virginia.  Compl. ¶¶ 2, 18; Pls.' Mem. at 2.  AvalonBay develops, owns, operates, and maintains luxury apartment communities in New York and elsewhere throughout the United States, including California, Connecticut, District of Columbia, Florida, Maryland, Massachusetts, New Jersey, Rhode Island, Texas, Virginia, and Washington.  Compl. ¶¶ 2, 19; Pls.' Mem. at 3.  AvalonBay owns multiple properties throughout New York State.  Compl. ¶ 21; Pls.' Mem. at 2.

Tanksi worked for AvalonBay as a "Maintenance Supervisor" from March 17, 2014 to May 25, 2015.  Compl. ¶¶ 3, 13, 28; Pls.' Mem. at 2.  He was assigned to two of AvalonBay's properties in Coram, New York:  the Avalon Pines property and the Avalon Charles Pond property (collectively, "the Coram Properties").  Compl. ¶¶ 29, 31; *see* Pls.' Mem. at 2.  Plaintiff Tanski's responsibilities included the day-to-day maintenance of the Coram Properties and responding to tenant maintenance requests.  Compl. ¶¶ 14, 32; Pls.' Mem. at 2.  At each of the Coram Properties, he supervised a team of approximately seven maintenance employees such as janitors and senior technicians.  Compl. ¶¶ 32, 33; Pls.' Mem. at 2.

Plaintiff alleges that he was "a salaried, non-exempt full-time employee[] of AvalonBay hired to work a regular schedule of 40 hours per week."  Compl. ¶ 38.  He was scheduled to work from 8 a.m. to 5 p.m., five days per week, with a one-hour, unpaid lunch break each day. *Id*. ¶ 34.  According to Tanski, opt-in Plaintiff Santandar worked as a technician for AvalonBay

from September 10, 2007 through June, 2014 and has personal knowledge of the compensation

practices at issue in this case.  Pls.' Mem. at 3.

Plaintiffs maintain that AvalonBay lists job openings on its website.  Pls.' Mem. at 3.

"These postings list numerous locations where AvalonBay is seeking a Maintenance Supervisor

or Technician, including California, Maryland, Massachusetts, New Jersey, New York, Virginia,

Washington, and the District of Columbia.  Despite the nationwide range of postings, the job

descriptions for Maintenance Supervisors are the same across the board, and the same is true for

Maintenance Technicians."  *Id.*  Each job posting describes the responsibilities of a Maintenance

Supervisor and of a Maintenance Technician respectively as follows:

> [Supervisor] Responsibilities: The Maintenance Supervisor will be
> responsible for leading a team in the maintenance and preventive
> maintenance efforts for an assigned community including the
> physical aspects of the building(s), HVAC, electrical, plumbing,
> carpentry, major appliances and amenities. Performs the job duties
> of the positions supervised.
>
> Qualifications: Qualified candidates will have 3-4 years apartment
> maintenance or related field. HVAC experience and CFC
> Certifications a plus!
>
> [Technician] Responsibilities: The Maintenance Technician will be
> responsible for executing maintenance requests by diagnosing
> problems and making repairs and ensuring that service requests and
> repairs are made in a timely manner.
> Qualifications: Qualified candidates must have the following
> experience:
> - 2-3 years apartment maintenance or related field.
> - Basic appliance repair; plumbing; electrical.
> - HVAC - only as allowed by law without EPA certification.
> - Sheetrock; carpentry; wallpaper/painting; roofs and gutters;
>   foundation.
> - Experienced in the use of basic cleaning supplies and
>   equipment.

Pls.' Mem. at 3-4 (citing *Careers at Avalon Bay*, AVALON BAY COMMUNITIES) (alterations

in text).

Plaintiffs aver that maintenance and service employees recorded their time by using AvalonBay's fingerprint system to "clock-in" when they arrived at their respective properties and "clock-out" when they left for the day.  Compl. ¶ 35; Pls.' Mem. at 4.   According to Plaintiffs, "[t]hese employees are eligible to receive overtime compensation for the hours they work in excess of 40 hours per work week."  Pls.' Mem. at 4.

The Complaint states that members of the maintenance staff "were regularly required to attend staff meetings, training sessions, employee lunches, and other work-related events," which were conducted during normal business hours — 8 a.m. to 5 p.m.  Compl. ¶ 40; Pls.' Mem. at 5. These meetings were attended by "Maintenance Supervisors and Technicians assigned to AvalonBay properties other than the Coram Properties," Compl. ¶ 40, including properties located in New York, New Jersey and Connecticut.  Pls.' Mem. at 5.  The meetings "were usually held during normal business hours of 8:00 a.m. to 5:00 p.m., Monday through Friday, and could last for several hours depending on the nature of the event."  Compl. ¶ 41; Pls.' Mem. at 5.  According to Plaintiff Tanski, he was not required to clock in or out in order to record his participation in these meetings, Compl. ¶ 43, and employee attendees "would often have to report back to their work locations after the meeting concluded to continue working until 5:00 p.m."  Compl. ¶ 41.

Plaintiffs assert that "[w]hile these meetings were work-related, conducted during business hours, and often mandatory, Defendant improperly labeled the time spent during these meetings as 'Non-Productive' hours."  Compl. ¶ 42; Pls.' Mem. at 5.  Tanski maintains that he was compensated for "[a]ny 'Non-Productive' work exceeding forty hours per week . . . at [his] regular rate of pay of $26.00 per hour, not at his overtime rate of one-and-one-half times his normal pay rate ($39.00 per hour)[.]  Compl. ¶ 44.  "In other words, if [Plaintiff] worked forty-

five hours in a given work week, and five of those hours were labeled by Defendant as 'Non-Productive' hours, [Plaintiff] would receive $26.00[/hour] pay for all forty-five hours. Defendant did not calculate those extra five hours worked by [Plaintiff] at the required overtime rate of $39.00 per hour." *Id.*

According to the Complaint, "Defendant actively schemed to prevent their employees from earning overtime, which was accomplished through Defendant's 'non-productive hours' policy." Compl. ¶ 45; *see* Pls.' Mem. at 22. Specifically, Tanski and his co-workers noticed how Defendant "would schedule these 'Non-Productive' meetings/events more frequently during weeks where it looked like the employees' hours were going to exceed forty employee's hours." Compl. ¶ 45. If an employee's hours exceeded forty, AvalonBay "would have those 'non-productive hours' reserved to off-set any accumulated overtime hours." *Id.* Tanski states that he "was never made aware of Defendant's policy concerning 'Non-Productive' hours prior to being hired by AvalonBay" and that the offer letter he received "upon hiring neglected to mention that Defendant would be labeling certain work hours as either productive or non-productive hours, or that non-productive hours would not be eligible for overtime pay." *Id.* ¶ 46. [1]

---

[1] The Complaint alleges that the terms and conditions of Plaintiff's employment are detailed in an offer letter Plaintiff received from AvalonBay Senior Maintenance Manager Kurt M. Rose on February 28, 2014. Compl. ¶ 28; *see* Offer Ltr., annexed to Compl. as Ex. A. According to the Complaint, the offer letter "specifically acknowledges that as a Maintenance Supervisor Plaintiff was entitled to overtime compensation." *Id.* ¶ 28. The letter states, in relevant part, as follows:

> Your base rate of pay will be $26.00 per hour and you will be paid on AvalonBay's regular weekly paydays which are Friday. As this is a "non-exempt position," you will be entitled to receive additional overtime compensation for all time worked beyond your regularly scheduled hours. Overtime hours, which must be directed or approved in advance by your manager, are paid at the rate of $39.00 per hour, which rate is equal to one and one-half (1 ½) times your

Upon reviewing his paycheck, Tanski became aware of Defendant's non-productive hours policy which "specifically listed separate 'Earnings' categories for 'Non-Productive Hours' and 'Overtime.' Any time labeled as 'Non-Productive Hours' was assigned a regular rate of pay whether or not [Plaintiff]'s total hours worked for that week exceeded forty hours." Compl. ¶47.  Plaintiff maintains that this practice was uniform nation-wide since paystubs were issued out of Defendant's headquarters in Virginia, not out of its regional or local offices.  Pls.' Mem. at 6-7.  The Complaint includes the following example of how Defendant categorized Plaintiff Tanski's paycheck:

| Earnings: | Rate: | Hours: |
|---|---|---|
| Regular | 26.00 | 40.00 |
| Overtime | 39.00 | .75 |
| Non-Productive Hours | 26.00 | 8.00 |
|  |  |  |
| Total |  | 48.75 |

Compl. ¶ 48.

Paystubs for the weeks of April 6, 2014, September 21, 2014, October 19, 2014, and February 22, 2015 are also attached to the Complaint.  *Id.*; *see* Paystubs, annexed to Compl. as Ex. B.  These paystubs contain the following information:

| Week of April 6, 2014 |  |  |
|---|---|---|
| Earning | Pay Rate | Hours Worked |
| Regular | 26.00 | 38.50 |
| Non-Productive Hours | 26.00 | 3.00 |
| Gross Pay | 1,079.00 |  |

---

regular hourly rate, for all time worked in excess forty hours in any work week.

*Id.*; Compl., Ex. A (Offer Letter).

| Week of September 21, 2014 | | |
|---|---|---|
| Earning | Pay Rate | Hours Worked |
| Regular | 26.00 | 40.00 |
| Overtime | 39.00 | 0.75 |
| Non-Productive Hours | 26.00 | 8.00 |
| Gross Pay | 1,277.25 | |

| Week of October 19, 2014 | | |
|---|---|---|
| Earning | Pay Rate | Hours Worked |
| Regular | 26.00 | 37.00 |
| Call In Pay | 26.00 | 2.00 |
| Non-Productive Hours | 26.00 | 3.00 |
| Gross Pay | 1092.00 | |

| Week of February 22, 2015 | | |
|---|---|---|
| Earnings | Rate | Hours |
| Regular | 26.00 | 33.75 |
| Call In Pay | 26.00 | 3.50 |
| Non-Productive Hours | 26.00 | 8.00 |
| Gross Pay | 1,176.50 | |

Compl., Ex. B (Paystubs).

According to the Complaint, "AvalonBay is aware that the Plaintiff and members of the putative class regularly work uncompensated overtime, which the Company improperly labels as 'non-productive hours.'" Compl. ¶ 50. Tanski's supervisor, Mr. Rose, explained to him that Defendant "determined what type of work would be considered 'non-productive.'" *Id*., ¶ 49. Further, Plaintiff and other maintenance workers, "including workers assigned to different AvalonBay properties in New York and New Jersey at AvalonBay, discussed [Defendant]'s 'non-productive hours' policy on many occasions." *Id*. Plaintiff states that he and his co-workers "would often complain about how they were being shorted overtime compensation because of this 'Non-Productive' classification." *Id*.

Tanski describes two other scenarios in which he was paid straight pay rather than overtime wages. He states that AvalonBay expects employees to perform work-related tasks

prior to "clocking-in." Pls.' Mem. 5-6; Compl. ¶ 37. Tanski "was responsible for purchasing maintenance supplies twice per week before reporting to work in the morning, yet this time was not considered part of his work day because it occurred before he officially 'clocked-in.'" Pls.' Mem. at 6; *see* Compl. ¶ 37. These trips would take anywhere from a half hour to one hour. Pls.' Mem. at 6; Compl. ¶ 37.

Defendant's policies and practices regarding unpaid overtime compensation are uniformly applied to all non-exempt maintenance and service employees of the Defendant. Pls.' Mem. at 6. Tanski claims Defendant is aware that these employees are not being properly compensated for hours worked prior to "clocking-in." *Id.*

Based on the foregoing allegations, the Complaint asserts claims against AvalonBay for unpaid overtime compensation in violation of the FLSA and the NYLL. *See* Compl. ¶¶ 51-93. Plaintiff brings his FLSA overtime claims as a putative collective action, pursuant to 29 U.S.C. § 216(b), and his NYLL claims as a putative class action under Fed. R. Civ. P. 23, on behalf of all "[c]urrent and former non-exempt employees of Defendant who perform or performed work in any of Defendant's locations in excess of forty (40) hours which was classified as 'Non-Productive Hours.'" *Id.* ¶¶ 51, 65.3.[2] Plaintiff alleges that Defendant treated the putative collective action and class action members similarly through their "practice" of "requiring them to work in excess of forty (40) hours per work week without adequate overtime compensation for all hours worked including 'non-productive hours.'" *Id.* ¶ 53.[3] The Complaint further alleges

---

[2]    Plaintiff's proposed time period for his class allegations is "October 30, 2009 to the date of final judgment in this matter." Compl. ¶ 65.

[3]    Plaintiff's collective action and class action allegations are limited to Defendant's alleged practice of failing to pay overtime for all non-productive hours worked in excess of 40 hours per week. *See* Compl. ¶¶ 51-93. Although Plaintiff alleges that Defendant failed to pay him overtime wages for "call-in" hours and for time spent on trips to Home Depot before clocking in, *see id.*

that AvalonBay failed to provide employees with "true and accurate time and pay records for all hours worked," in violation of NYLL § 195(3). *Id.* ¶ 69(d).

### 1.    *Plaintiff Tanski's Declaration*

Plaintiff Tanski's Declaration reads much like the Complaint. For this reason, many of the allegations comprising background material set forth in detail above will not be repeated here. *See generally* Declaration of Timothy Tanski ("Tanski Decl.") [DE 46-1], annexed as Exhibit A to the Declaration of Frank R. Schirripa in Support of Plaintiff's Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA and for Expedited Discovery ("Schirripa Decl.") [DE 46]. According to Plaintiff, as a maintenance supervisor at Defendant's Coram properties, he oversaw approximately 7 to 10 maintenance employees, including Diego Santander, Richard Sardi, Gary Oldham, Donald Conklin, Thomas Venezia, and Junior Taylor, all of whom worked as Technicians at varying levels. *Id.* ¶¶ 4-5. Consistent with the Complaint, Plaintiff alleges that as a maintenance and service employee, he was required to "clock in" and "clock out" of work each day using Defendant's fingerprint system. *Id.* ¶ 9. Plaintiff further states that he was often required to work in excess of 40 hours per week in order to complete his tasks and that he was eligible to receive overtime compensation for those hours. *Id.* ¶ 10.

As alleged in the Complaint, Plaintiff claims that the maintenance staff was regularly required to attend "staff meetings, training sessions, and other work-related events that were conducted during normal business hours of 8:00 a.m. to 5:00 p.m., Monday through Friday." *Id.* ¶ 14. Defendant classified the time spent at these events as "non-productive" hours and

---

¶¶ 36-37, Plaintiff does not make these allegations on behalf of the putative collective action member and class members. *See id.* ¶¶ 51-93.

maintenance staff assigned to AvalonBay properties other than the Coram properties were present at these events. *Id.* ¶ 15. It was at these mandatory gatherings where Plaintiff became acquainted with maintenance workers from properties located "throughout New York and New Jersey." *Id.*

Plaintiff asserts that he was directed to purchase maintenance supplies twice per week before clocking in at the beginning of the workday. *Id.* ¶ 17. These trips would take between 30 minutes to one hour and Plaintiff was never compensated for that time. *Id.* Plaintiff maintains that he is "personally aware of other maintenance supervisors and workers who were also not compensated for similar work before 'clocking in' for the day. *Id.* ¶ 18. As in the Complaint, Plaintiff avers that he had never been informed of Defendant's "non-productive hours" policy and that it was not until he reviewed one of his paystubs that he discovered that certain hours were designated "non-productive." *Id.* ¶ 21. Plaintiff closes his declaration with the following statements:

> Based on my personal knowledge and conversations with other individuals who have worked as maintenance and service employees for AvalonBay, I know that there are many other former and current AvalonBay maintenance and service employees who have been treated similarly with respect to unpaid overtime hours. *Id.* ¶ 22.
>
> I believe all maintenance and service employees who have worked at AvalonBay should receive notice of this lawsuit and be given an opportunity to join the case.

*Id.* ¶ 23.

### 2.    *Diego Santander's Declaration*

The Motion for Conditional Certification also relies on the Declaration of Diego Santander, a former employee of Defendant who has opted-in to the proposed collective. *See generally* Declaration of Diego Santander ("Santander Decl.") [DE 46-2], annexed as Ex. B to

Schirripa Decl.  Santander worked as a Technician for Defendant from September 10, 2007 until June 2014, *id.* ¶¶ 2-3, and Plaintiff became his supervisor in March 2014.  *Id.* ¶ 9.  Plaintiff Santander asserts that he was assigned to Defendant's Coram properties but also performed work at its midtown Manhattan location.   *Id.* ¶ 4.

According to Santander, he was required to "clock in" and "clock out" of each work day using Defendant's fingerprint system, *id.* ¶ 11, and that he was eligible to receive overtime compensation for hours he worked in excess of 40 hours per week.  *Id.* ¶ 12.  Plaintiff Santander alleges that maintenance supervisors, technicians, and service workers, including Plaintiff Tanski, Gary Oldham, Willie Genoa, Juan Manivesa, Diana Laplante, Marioe Rodane, Dominick Cotrone, and himself, were required to attend "staff meetings, training sessions, and other work-related events that were conducted during normal business hours of 8:00 am to 5:00 pm, Monday through Friday." *Id.* ¶ 16.  Defendant would "regularly and unilaterally" classify the hours spent at the mandatory meetings as "'non-productive' hours in order to avoid paying" overtime.  *Id.*

Plaintiff Santander claims that at these meetings, he became acquainted with maintenance and service employees from Defendant's properties located throughout New York, New Jersey and Connecticut and learned that they, too, had time entries designated "non-productive" hours for their time spent at these events.  *Id.* ¶ 18.  According to Santander, Defendant never disclosed its "non-productive" hours policy at the time of Santander's hire or in his employment contract. *Id.* ¶ 20.

In support of his position, Plaintiff Santander has attached copies of three paystubs to his Declaration. Those paystubs provide, in relevant part, the following information:

11

| Week of 7/15/2012 | | |
|---|---|---|
| Earnings | Pay Rate | Hours |
| Regular | 19.80 | 39.00 |
| Overtime | 34.75 | 3.00 |
| Non-Productive Hours | 19.80 | 8.00 |
| Sick Time - Hourly | 19.80 | 2.0 |
| Gross Pay | [not provided] | |

| Week of 4/6/2014 | | |
|---|---|---|
| Earnings | Pay Rate | Hours |
| Regular | 26.00 | 18.50 |
| Non-Productive Hours | 26.00 | 3.00 |
| Overtime | | |
| Gross Pay | 1,079.00 | |

| Week of 9/21/2014 | | |
|---|---|---|
| Earnings | Pay Rate | Hours |
| Regular | 26.00 | 40.00 |
| Overtime | 39.00 | .75 |
| Non-Productive Hours | 26.00 | 8.00 |
| Gross Pay | 1,277.25 | |

Shirripa Decl., Ex. C (Paystubs).

Plaintiff Santander closes his Declaration with the following statements:

> Based on my personal knowledge and conversations with other individuals who have worked as maintenance and service employees for AvalonBay, including Timothy Tanski, I know that there are many other former and current AvalonBay maintenance and service employees who have been treated similarly with respect to unpaid overtime hours. *Id*. ¶ 21.

> I believe all maintenance and service employees who have worked at AvalonBay should receive notice of this lawsuit and be given an opportunity to join the case.

*Id*. ¶ 22.

### 3.    *The Relief Sought by Plaintiffs*

Plaintiffs seek conditional certification of all those who "have been employed as a non-exempt maintenance or service employee (Maintenance Supervisor, Technician 1, Technician 2,

Technician 3) at any AvalonBay facility anytime since October 30, 2009." Proposed Court-Authorized Notice of Lawsuit Regarding Unpaid Wages ("Proposed Notice"), annexed as Ex. F to Schirripa Decl. Plaintiffs also seek approval of their proposed Notice and Consent to Join form. *See id.* Lastly, Plaintiffs seek production of a "computer-readable list of the names, last known addresses, telephone numbers, e-mail addresses, social security numbers, dates of employment, titles, compensation rates, and hours worked per week for all persons employed by AvalonBay as non-exempt, overtime-eligible maintenance and service employees between October 30, 2009 and the present." Pls.' Mem. at 21. Plaintiffs further request that the New York Labor Law's six year statute of limitations be applied in this case, and that such statute of limitations be tolled until such time as Plaintiffs are able to send notice to potential opt-in Plaintiffs. *Id.* at 23.

## B.     Defendant's Opposition

Defendant argues that Plaintiffs' motion for nationwide certification should be denied on the grounds that Plaintiffs have failed to demonstrate that they are similarly situated to other non-exempt maintenance employees of the Defendant nationwide. *See generally* Defendant AvalonBay's Brief in Opposition to Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA and for Expedited Discovery ("Def.'s Opp'n") [DE 48]. In support of its arguments, Defendant has submitted a Memorandum of Law and the Declaration of Steven Batchelor. *See generally id.*; Declaration of Steven Batchelor in Opposition to Plaintiffs' Motion for Nationwide Conditional Certification ("Batchelor Decl.") [DE 48-1]. Mr. Batchelor has held the position of Director of National Labor Relations and Human Resources for Defendant since 2010 and, in that capacity, has access to and is familiar with "a variety of AvalonBay business records pertaining to AvalonBay's properties and the

employees who work at them." *See* Batchelor Decl. ¶ 1. In support of Defendant's contentions,

Batchelor attests to the apartment communities owned and managed by AvalonBay, the timing

and location of the employment of individuals whom Plaintiffs name in their declarations, and

other information regarding the Defendants' business operations. Batchelor Decl. ¶¶ 11-19.

## III.    LEGAL STANDARD

### A.    Legal Standard on a Motion for Conditional Certification

The FLSA provides, in pertinent part, as follows:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Section 216(b) provides an employee with a private right of action to

recover overtime compensation and/or minimum wages. *Id.*; *Moore v. Eagle Sanitation, Inc.*,

276 F.R.D. 54, 57 (E.D.N.Y. 2011); *Bifulco v. Mort. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y.

2009); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003).

"Although the FLSA does not contain a class certification requirement, such orders are often

referred to in terms of 'certifying a class.'" *Bifulco*, 262 F.R.D. at 212 (citations omitted).

Courts within the Second Circuit apply a two-step analysis to determine whether an

action should be certified as an FLSA collective action. *See Myers v. Hertz Corp.*, 624 F.3d 537,

544-45 (2d Cir. 2010) (noting that district courts within this Circuit have "coalesced around a

two-step method" for analyzing collective action certification); *Alvarez v. IBM Restaurants Inc.*,

839 F. Supp. 2d 580, 583 (E.D.N.Y. 2012); *Bijoux v. Amerigroup New York, LLC*, No. 14-CV-3891, 2015 WL 4505835, at *2 (E.D.N.Y. July 23, 2015) *report and recommendation adopted*, 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015); *Amador v. Morgan Stanley & Co., LLC*, No. 11-CV-4326, 2013 WL 494020, at *2 (S.D.N.Y. Feb. 7, 2013).  First, the court determines whether the proposed class members are "similarly situated."  *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012); *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2008); *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001).  If the court decides in the affirmative, then the proposed class members must consent in writing to be bound by the result of the suit, or "opt-in."  *McGlone,* 867 F. Supp. 2d at 442; *see* 29 U.S.C. § 216(b).  The second step, which typically occurs after the completion of discovery, requires the court to make factual findings whether the class members are actually similarly situated.  *Rosario v. Valentine Ave. Discount Store, Co.*, 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011); *Bifulco*, 262 F.R.D. at 212.  "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff."  *Bifulco*, 262 F.R.D. at 212 (quotations omitted).

The instant motion concerns only the first step — whether the proposed opt-in members are "similarly situated" such that conditional certification should be granted.  At this stage, "the evidentiary standard is lenient," *Rubery*, 569 F. Supp. 2d at 336, and plaintiffs need only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  *Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *see, e.g.*, *Perez v. Allstate Ins. Co.*, No. 11-CV-1812, 2014 WL 4635745, at *5 (E.D.N.Y. Sept. 16, 2014); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 552 (S.D.N.Y. 2013); *Cano v. Four M Food Corp.*, No. 08-CV-

3005, 2009 WL 5710143, at *3 (E.D.N.Y. Feb 3, 2009); *Doucoure v. Matlyn Food, Inc.*, 554 F.

Supp. 2d 369, 372 (E.D.N.Y. 2008). "In making this showing, 'nothing more than substantial

allegations that the putative class members were together the victims of a single decision, policy

or plan' is required." *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-4950, 2009 WL 1706535, at

*3 (E.D.N.Y. June 16, 2009) (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y.

2005)). Moreover, courts have repeatedly stated that Section 216(b)'s "similarly situated"

requirement is "considerably less stringent" than the requirements for class certification under

Federal Rule of Civil Procedure 23, and "that a party seeking to maintain a collective action need

not meet the requirements of Rule 23 for class certification." *Rodolico*, 199 F.R.D. at 481

(collecting cases); *see Dilonez v. Fox Linen Serv., Inc.*, 35 F. Supp. 3d 247, 252 (E.D.N.Y. 2014)

(stating that a collective action under the FLSA "is different than a typical class action under the

Federal Rules of Civil Procedure, the strict requirements of which – numerosity, commonality,

typicality, and adequate representation – do not apply to a collective action").

      At the initial certification stage, courts do not require proof of an actual FLSA violation

but rather require the existence of a "'factual nexus' [] between the plaintiff's situation and the

situation of other potential plaintiffs." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362

(E.D.N.Y. 2007) (quoting *Wraga v. Marble Lite, Inc.*, No. 05-CV-5038, 2006 WL 2443554, at

*1 (E.D.N.Y. Aug. 22, 2006)); *see Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491,

2015 WL 4603117, at *6 (E.D.N.Y. 2015); *Calderon v. King Umberto, Inc.*, 892 F. Supp. 2d

456, 459 (E.D.N.Y. 2012). This determination is typically "based on the pleadings, affidavits

and declarations" submitted by the plaintiff or plaintiffs. *See Fa Ting Wang*, 2015 WL 4603117,

at *6; *Robles v. Liberty Rest. Supply Corp.*, No. 12-CV-5021, 2013 WL 6684954, at *5

(E.D.N.Y. Dec. 18, 2013); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)

(court's initial determination based on "pleadings and affidavits"); *see also Hallissey v. Am. Online, Inc.*, No. 99-CV-3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.").

"[A]lthough the burden on the plaintiff at this preliminary stage is modest, 'it is not non-existent.'" *Boice v. M+W U.S., Inc.*, No. 14-CV-0505, --- F. Supp. 3d ---, 2015 WL 5316115, at *11 (N.D.N.Y. Sept. 11, 2015) (quoting *Khan v. Airport Mgmt. Servs., LLC*, No. 10–CV–7735, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011)).  As the Second Circuit has explained, "[t]he 'modest factual showing' cannot be satisfied simply by 'unsupported assertions.'" *Myers*, 624 F.3d at 555 (quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *see Morales v. Plantworks, Inc.*, No. 05-CV-2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (stating that "conclusory allegations are not enough" to meet the "modest factual showing" at the first stage of collective action certification).

However, the standard of proof should still remain "low . . . because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (citing *Hoffman*, 982 F. Supp. at 261) (emphasis in original); *see Trinidad*, 962 F. Supp. 2d at 553.  With this in mind, courts have routinely found that the allegations in the pleadings and the "personal observations of one plaintiff's affidavit" are "sufficient to make the modest factual showing necessary to conditionally certify [a] class." *Hernandez v. NGM Mgmt. Grp. LLC*, No. 12-CV-7795, 2013 WL 5303766, at *3 (S.D.N.Y. Sept. 20, 2013) (collecting cases); *see Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-CV-2625, 2015 WL 4240985, at *3 (S.D.N.Y. July 13, 2015) (finding that the allegations in the complaint and the affidavit of one named plaintiff "met the minimal burden at this preliminary stage of demonstrating that [the

plaintiffs] were subject to a common policy or practice and were 'similarly situated' to one another and to potential opt-in plaintiffs"); *Kemper v. Westbury Operating Corp.*, No. CV 12-0895, 2012 WL 4976122, at *2 (E.D.N.Y. Oct. 17, 2012) (granting conditional certification for overtime claims based on affidavit of the named plaintiff); *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12-CV-265, 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012) (granting motion for conditional certification based on declaration by the plaintiff "confirming that she and other non-exempt employees employed by defendants in tipped positions, who performed work similar to hers, were, *inter alia*, paid less than the statutory minimum wage and not paid overtime pay") (citing *Bowens v. Atlantic Maintenance Corp.*, 546 F. Supp. 2d 55, 82 (E.D.N.Y. 2008)); *Wraga*, 2006 WL 2443554, at *2 (granting motion to certify collective action based on single plaintiff's affidavit alleging failure to pay overtime where he stated that he was aware, based upon personal conversations, of approximately 18 other employees who were subject to the same policies); *see also Doucoure*, 554 F. Supp. 2d at 373 (permitting preliminary certification where plaintiff offered his complaint which contended that he routinely worked in excess of forty hours per week, the defendant failed to pay him overtime, and there were similarly situated hourly employees also denied overtime).

### B.    Form of Notice

"Neither the [FLSA], nor other courts, have specifically outlined what form court-authorized notice should take nor what provisions the notice should contain." *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 59 (E.D.N.Y.2011) (citing *Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317, 323 (S.D.N.Y.2007)).  The Supreme Court has abstained from reviewing the contents of a proposed notice under § 216(b) noting "we decline to examine the terms of the notice ... We confirm the existence of the trial court's discretion, not the details of its exercise."

*Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 486, 107 L.Ed.2d 480 (1989). "When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions" and whether the notice provides "accurate and timely notice concerning the pendency of the collective action, so that [an individual receiving the notice] can make an informed decision about whether to participate." *Fasanelli*, 516 F.Supp.2d at 323; *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y.2009).

## IV.    DISCUSSION

### A.    Conditional Certification

Plaintiff seeks conditional certification of a class of non-exempt maintenance and service employees at any AvalonBay facility. *See* Shirripa Decl., Ex. F (Proposed Notice). Plaintiffs assert that they have satisfied the first step of the conditional certification analysis – that is, they have adequately shown that there are other similarly situated employees who have been subjected to Defendant's uniform practice of "fail[ing] to pay non-exempt maintenance and service employees overtime compensation for hours worked in excess of 40 hours in a work week." Pls.' Mem. at 12. Defendants vigorously contest Plaintiffs' motion and urge the Court to deny Plaintiffs' request for conditional certification of the proposed nationwide class.

#### 1.    Non-Productive Hours Policy

##### a.    *New York Locations*

Plaintiffs' submissions satisfy their modest burden of showing that they are similarly situated to non-exempt maintenance and service employees at Defendant's New York locations. Plaintiffs allege a "common policy or plan" which violates the FLSA, namely, that Defendant improperly labeled the hours spent at certain mandatory, work-related events as "non-productive

hours." Pls.' Mem. at 5. According to Plaintiffs, such reclassification was done unilaterally and for the purpose of avoiding having to pay employees overtime compensation. Pls.' Mem. at 5; Tanski Decl. ¶¶ 14, 19, 20, 22; Santander Decl. ¶ 15, 21; Compl. ¶¶ 38-45, 60.

In addition, Plaintiffs adequately demonstrate the existence of similarly situated non-exempt maintenance and service workers at Defendant's New York locations. Plaintiff Tanski has personal knowledge of Defendant's pay practices at the two Coram properties. Likewise, Plaintiffs proffer the Declaration of opt-in Plaintiff Santander who confirms those practices. Santander provides first hand observations of pay practices at one of Defendant's midtown Manhattan locations where he would sometimes work. Santander Decl. ¶¶ 4-5.

Both Santander and Tanski provide the names of service and maintenance employees whom they allege are similarly situated to them. In this regard, Plaintiff Santander avers that at the mandatory meetings at issue here, he became "acquainted" with other maintenance and service employees, including Plaintiff Tanski, Gary Oldham, Willie Genoa, Juan Manivesa, Diana Laplante, Mario Rodane, and Dominick Cotrone. *Id.* ¶ 16. It was in this context that he learned other maintenance and service employees were also being assigned "non-productive hours" for time spent at such events. Santander Decl. ¶ 18. Tanski sets forth the names of maintenance and service employees whom he supervised: Plaintiff Santander, Richard Sardi, Gary Oldham, Donald Conklin, Thomas Venezia and Junior Taylor, all of whom worked as Technicians at various levels. Tanski Decl. ¶ 5. According to Defendant AvalonBay's Director of National Labor Relations and Human Resources, Steven Batchelor, many of these named individuals worked at a number of AvalonBay locations throughout New York, including Coram, Melville, Smithtown, Glen Cove, and New Rochelle. Batchelor Decl., ¶¶ 12-18

20

Finally, Tanski and Santander have each provided copies of their respective paystubs showing weeks during which they worked in excess of 40 hours and were compensated for "non-productive" hours at their regular rate of pay of $26.00 per hour.  Schirripa Decl., Ex. B (Paystubs) and Ex. C (Paystubs).  The combination of supporting declarations, the names of similarly situated employees who worked in various locations throughout New York, plus these paystubs warrant collective active certification of a class of maintenance and service employees employed at Defendant's New York locations.

Defendant, however, urges the Court to deny Plaintiffs' motion on the grounds that its "non-productive" hours policy is facially legal.  Defs.' Opp'n at 7-9; *see* Non-Productive Hours Policy ("NPH Policy") [DE 48-1], annexed as Ex. A to Batchelor Decl.  In support of its position, Defendant cites *Jenkins v. TJX Companies, Inc.*, 853 F. Supp. 2d 317 (E.D.N.Y. 2012).  In *Jenkins*, the plaintiff sought certification of "all persons employed by the defendants, outside of California, as assistant store managers, three years from the date of the order to the present." *Id*. at 318.  The plaintiff alleged that he and potential opt-in plaintiffs were classified as exempt even though they primarily performed non-exempt managerial tasks.  *Id*. at 322.   The Court noted that "the mere classification of a group of employees—even a large or nationwide group—as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for purpose § 216(b) purposes." *Id*. at 323 (quoting *Vasquez v. Vitamin Shoppe Indus Inc.*, No. 10-8820, 2011 WL 2693712, at *4 (S.D.N.Y. 2011)) (citing *Eng–Hatcher v. Sprint Nextel Corp*., No. 07–CV–7350, 2009 WL 7311383, at *3 (S.D.N.Y. Nov. 13, 2009); *Brickey v. Dolgencorp., Inc*., 272 F.R.D. 344, 348 (W.D.N.Y. 2011)).  The court in *Jenkins* proceeded to explain that when a plaintiff's allegations involve a "presumptively legal official policy," he or she must

adequately demonstrate the existence of an illegal de facto policy. *See id.* Plaintiff Jenkins'

"sole submission" in support of such a policy was his deposition testimony, "discussing his own

personal experience." *Id.* at 321. Jenkins provided "no other affidavits, depositions, or even

hearsay evidence that he was actually aware of other [Assistant Store Managers] who also" fell

victim to the purported common policy. *Id.* Finding a lack of evidence to support the existence

of a de-facto illegal policy, the court in *Jenkins* declined to certify the plaintiff's requested class

of Assistant Store Managers, which, the court noted, would potentially include "over 700

employees at more than 200 stores nationwide." *Id.* at 324-25.

Assuming here, for the sake of argument, that Defendant's "non-productive" hours policy

as outlined in Exhibit A to Attorney Batchelor's Declaration is facially valid, the Court finds that

Plaintiff Tanski and opt-in Plaintiff Santander have proffered more evidence of a de-facto illegal

policy than did the plaintiff in *Jenkins*. Santander's personal observations and conversations

with other maintenance and service employees regarding Defendant's compensation policy are

part of that evidence. Both Plaintiffs provide the names of similarly situated employees and of

their actual paystubs showing weeks during which they worked in excess of 40 hours per week

and all the "non-productive hours" paid at the regular rate of pay. The Court finds that this

combination of evidence suffices to show the existence of a potential de-facto illegal policy at

this stage in the litigation.

Defendant also argues that Plaintiffs' vague and conclusory assertions regarding alleged

"acquaintances" with other employees should be disregarded. Def.'s Opp'n at 13. The Court

disagrees. "[C]ourts have relied on plaintiffs' 'firsthand observations' to identify a class of

similarly situated individuals." *Garcia v. Spectrum*, 102 F. Supp. 3d 541, 548 (S.D.N.Y. 2015)

(quoting *Hernandez v. Immortal Rise, Inc.*, No. 11-4360, 2012 WL 4369746, at *4 (E.D.N.Y.

Sept. 24, 2012)); *see Romero v. La Revise Associates, L.L.C.*, 968 F. Supp. 2d 639, 646

(S.D.N.Y. 2013) (quoting *Hernandez*, 2012 WL 4369746, at *4)).  "[W]here a plaintiff bases an

assertion of a common policy on observations of coworkers or conversations with them, he must

provide a minimum level of detail regarding the contents of those conversations or

observations."  *Reyes v. Nidaja*, LLC, No. 14-9812, 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3,

2015).  The kinds of details contemplated in such circumstances include the names of the

individuals with whom a plaintiff spoke, or the dates and times of those conversations.  "Such

details are particularly important where a conditional certification motion is based on the lone

affidavit of a single employee, who performed a single job function."  *See Mata v. Foodbridge*

*LLC*, No. 14-8754, 2015 WL 3457293, at *4 (S.D.N.Y. 2015) (citing *Garcia*, 2015 WL 2078222,

at *6).  Here, Plaintiffs are not relying on an affidavit from a single employee.  Moreover, the

failure to provide dates and times is not fatal to a plaintiff's motion.  *See Garcia*, 102 F. Supp. at

*549 ("While it would be helpful to have the time and dates of conversations, it is not surprising

that plaintiffs would be unable to recall such specifics.").

    Plaintiffs, here, do not specifically identify which employees are the individuals with

whom they spoke about Defendant's compensation policies, nor do they set forth the times and

dates of their conversations.  However, Plaintiffs do indicate that certain of these conversations

took place during the mandatory meetings described.  Likewise, Plaintiffs have provided the

names of similarly situated employees from Defendant's New York locations and Batchelor has

named those locations.  *See* Tanski Decl. ¶ 5; *see also* Santander Decl. ¶ 16; Batchelor Decl. ¶¶

11-18.  Information provided by Plaintiffs on similarly situated employees, in combination with

Tanski and Santander's corroborating affidavits regarding the Defendant's alleged "non-

productive hours" policy, tips the scales in favor of granting conditional certification at this point

in the litigation.  *See Wraga v. Marble Lite, Inc*., No. 05-5038, 2006 WL 2443554, at *2 (citing

*Gjurovich v. Emmanuel's Marketplace, Inc*., 282 F.Supp.2d 91, 96 (S.D.N.Y. 2003); *Patton*, 364

F. Supp. 2d 263, 267 (E.D.N.Y. 2005); *Young v. Cooper*, 229 F.R.D. 50, 55 (S.D.N.Y.2005))

("Courts routinely grant such motions based upon employee affidavits setting forth a defendant's

plan or scheme to not pay overtime compensation and identifying by name similarly situated

employees.").

  Defendant argues that "[f]our of the maintenance employees that Santander

identifies…were terminated long before the commencement of the FLSA's expanded three year

limitations period…" Defs.' Opp'n at 12.  Those individuals are therefore "irrelevant" for

purposes of certification, Defendant contends, because they have no FLSA claim.  *Id*.  The Court

disagrees.  Courts have held "[a]ffidavits of workers whose employment falls outside the

statutory period 'are probative of employer's wage and hour practices and they may corroborate

the claims of more recent violations.'"  *Rosario v. Valentine Avenue Discount Store, Co., Inc*.,

828 F. Supp. 2d 508, 516 (E.D.N.Y. 2011) (quoting *Lujan v. Cabana Mgmt., Inc*., No. 10-755,

2011 WL 317984, at *5 (E.D.N.Y. Feb. 1, 2011)); *Bittencourt v. Ferrara Bakery & Cafe Inc*.,

310 F.R.D. 106, 115 (S.D.N.Y. 2015) (quoting *Lujan*, 2011 WL 317984, at *5) ("To the extent

these conversations occurred outside the statute of limitations under the FLSA, they are

nonetheless 'probative of employer's wage and hour practices and they may corroborate the

claims of more recent violations.'").  Following this reasoning, the Court will not disregard any

similarly situated employees at this time on the grounds that their employment falls outside of

the FLSA statute of limitations.

  Putting these arguments aside for the moment, it should be noted that "courts have

conditionally certified a collective of employees spanning multiple locations based on the

allegations and affidavit of a single plaintiff who worked at only one location." *Qing Tian Zhuo v. Jua Xing 39th Inc*., No. 14-2848, 2015 WL 1514950, *3 (S.D.N.Y. April 1, 2015) (citing *Mendoza v. Ashiya Sushi 5, Inc*., No. 12–Cv–8629, 2013 WL 5211839, at *4–5 (S.D.N.Y. Sept.16, 2013); *Cheng Chung Liang v. J.C. Broadway Rest, Inc*., No. 12–Cv–1054, 2013 WL 2284882, at *1 (S.D.N.Y. May 23, 2013); *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc*., No. 12–Cv–265, 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012); *Harrington v. Educ. Mgmt. Corp*., No. 02–Cv–0787, 2002 U.S. Dist. LEXIS 8823, at *5–6, 2002 WL 1009463 (S.D.N.Y. May 17, 2002)); *see Hernandez v. Bare Burger Dio Inc.*, No. 12-7794, 2013 WL 3199292, *3 (S.D.N.Y. June 25, 2013) ("Indeed, courts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit.").

The Court finds that, based on the record here to date, the corroborating declarations proffered by Plaintiff Santander and Plaintiff Tanski, as well as Plaintiffs' pay stubs, satisfy the "modest factual showing" necessary to demonstrate that Plaintiffs and Defendant's non-exempt maintenance and service employees in New York are "similarly situated" with respect to Defendant's non-productive hours policy. *See generally Bhumithanarn*, 2015 WL 4240985, at *3; *Kemper*, 2012 WL 4976122, at *2; *Khamsiri*, 2012 WL 1981507, at *1.

Based on the above analysis, the Court hereby certifies a collective of non-exempt maintenance and service employees who worked at Defendant's New York locations.

### b. Nationwide Locations

Plaintiffs' showing with respect to Defendant's locations nationwide compels a different result, however. Because Plaintiffs' submissions do not include sufficient evidence of a nationwide common policy or plan to unilaterally and improperly classify the hours of non-

exempt maintenance and service employees as non-productive hours in order to avoid having to compensate for overtime,  the Court declines to certify a nationwide collective at this time.

Defendants cite *Sharma v. Burberry Limited*, 52 F. Supp.3d 443 (E.D.N.Y. 2014) in support of their position that Plaintiffs' "conclusory, non-specific assertions" based on "personal knowledge" and "conversations" fail to support conditional certification of a nationwide class. *See* Defs.' Opp'n at 13-14.  In *Sharma*, the plaintiffs sought certification of "all [Sales Associates] employed by Burberry at any time from December 26, 2009 to the present, and in New York from December 26, 2006 to the present.  *Id*. at 449.  In a Report and Recommendation, this Court denied certification of a nationwide class, finding that the "Plaintiffs' assertions about the pay practices at other stores across the country [were] conclusory and unsupported."  *Id*. at 459.  The Court went on to explain that "[w]hile '[c]ourts in this Circuit have commonly authorized the sending of collective action notices where plaintiff includes some probative information regarding similarly situated employees such as their names, their duties and their hours worked or where plaintiff provides affidavits from such employees setting forth the pertinent facts … where plaintiffs fail to provide specific factual allegations, courts routinely deny leave to send a collective action notice.'"  *Id*.  (quoting *Gu v. T.C. Chikurin, Inc.*, No. CV 2013–2322, 2014 WL 1515877, at *4 (E.D.N.Y. Apr. 17, 2014)) (citing *Jin Yun Zheng v. Good Fortune Supermarket Group (USA), Inc*., No. 13-60, 2013 WL 5132023, at *5 (E.D.N.Y. 2013); *McGlone v. Contract Callers, Inc*., 867 F. Supp. 2d 438, 444 (S.D.N.Y. 2012); *Vasquez*, 2011 WL 2693712, at *3; *Khan v. Airport Mgt. Servs*., LLC, No. 10 CIV. 7735, 2011 WL 5597371, at *4 (S.D.N.Y. Nov. 16, 2011); *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 356 (E.D.N.Y. 2008)).

In *Sharma*, all of the plaintiffs claimed that the alleged illegal pay practice was "widespread" and took place at other Burberry stores as well. *Id*. (internal quotation marks omitted). However, those plaintiffs "failed to provide any factual detail about these 'other SAs,' such as their names or where they worked." *Id*. Here, Plaintiffs' submissions are also devoid of sufficient probative information substantiating the claim that similarly situated employees exist at Defendant's locations outside of New York. As noted, Plaintiffs claim that they became acquainted with such employees at the mandatory meetings and in this context, they learned the non-New York maintenance and service employees were also receiving "non-productive" hours for the time spent at those meetings. Santander Decl. ¶¶ 16, 18; Tanski Decl. ¶ 15. Plaintiffs', however, fail to provide any further details of those conversations. In this regard, the Court looks to *Boice v. M+W U.S., Inc*, 130 F. Supp. 3d 677 (N.D.N.Y. 2015). In *Boice*, the plaintiff's affidavit provided the following information:

> believe[s] that all other designers whose primary duties were the same or substantially similar to mine were subject to the same compensation policy that I was. I know this because during the course of carrying out my duties I worked closely with the other Designers in various departments/disciplines and became friends with them. As such I had conversations with them on various topics, including frustration with the way we were paid.

*Id*. at 696 (alteration in original). The court in *Boice* concluded that "plaintiff fails to provide any detail regarding the conversations he had with these coworkers, such as the names or positions of these designers, the dates of these conversations, or any details surrounding the conversations." *Id*. (citing *Sanchez v. JMP Ventures, L.L.C.*, 13–CV–7264, 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014); *cf. Wraga*, 2006 WL 2443554, at *2). Like the plaintiff in *Boice*, Plaintiffs here aver that they had conversations with coworkers regarding alleged illegal pay practices. Although Plaintiffs identify the context of these conversations, they do not identify the names of

the individuals with whom they spoke, their specific positions, or the dates of the conversations. The Court recognizes, as it did in *Sharma*, that an articulation of the dates and times of such conversations are not always necessary. However, given the general lack of detail here, the Court finds that there is not a sufficient basis to discern a common factual nexus among employees of all of Defendant's locations in New Jersey, Connecticut, and throughout the country. *See Anjum v. J.C. Penney Co.*, No. 13-460, 2015 WL 3603973, at *6 (E.D.N.Y. June 5, 2015) (granting the plaintiffs' motion for conditional certification as to sales associates at the defendant's Manhattan and Staten Island stores where "each of the four Named Plaintiffs [ ] personally attested to the violations they claim occurred during their employment [ ] at the Staten Island Store, and [ ] identified by name similarly situated employees at both the Staten Island Store and the Manhattan Store…."); *Garcia v. Spectrum of Creations, Inc*., 102 F. Supp. 3d 541, 548 (S.D.N.Y. 2015) (granting conditional certification where the plaintiffs' "affidavits described the duties of workers and the practices of management at a single location based on their personal observations and on interactions with specifically identified employees."); *Bittencourt v. Ferrara Bakery & Cafe In*c., 310 F.R.D. 106, 115 (S.D.N.Y. 2015) (granting conditional certification where the plaintiff and a declarant both "identif[ied] other waiters by name, allege[d] these waiters were similarly paid below the minimum wage, and explain[ed] the basis for their belief); *Sanchez v. JMP Ventures, L.L.C*., 13-7264, 2014 WL 465542 (S.D.N.Y. 2014) (finding that the plaintiff's failure to "provide any detail as to a single such observation or conversation," which are "critical in order for the Court to determine the appropriate scope of the proposed class and notice process," left the court with "a list of generalized allegations that have been molded into a declaration which reads similarly to the complaint," which is exactly what courts in this district have determined are insufficient to support conditional certification.).

Moreover, notwithstanding the referenced conversations, Plaintiffs have failed to identify by name a single non-exempt maintenance and service employee at any of Defendant's locations outside of New York. According to AvalonBay's Steven Batchelor, each of the "technicians and other maintenance and service employees" whom Santander names in his Declaration were employed at one of Defendant's New York locations, and two of the six individuals whom Tanski identifies were also employed at Defendant's New York locations. Santander Decl Batchelor Decl. ¶¶ 11, 13-18. The remainder of the individuals listed in Tanski's Declaration are not addressed by Batchelor. However, Tanski indicates that each of the listed individuals were members of the maintenance and service teams which he oversaw while working at Defendant's Coram properties. Tanski Decl. 5.

In their Reply Plaintiffs provide no rebuttal to Defendant's assertions. *See generally* Pls.' Reply.[4] Therefore, the Court is unable at this time to determine a factual nexus between Plaintiffs and Defendant's other employees outside of New York. *See Boice*, 130 F. Supp. at 696; *see also Sharma*, 52 F. Supp at 460 ("Rather than rely on 'reasonable inferences,' Plaintiffs must provide 'actual evidence of a factual nexus between [their] situation and [the persons] [t]he[y] claim [] are similarly situated.'") (citing *Guillen v. Marshalls of AM, Inc.*, 841 F. Supp. 2d 797, 901 (E.D.N.Y. 2012) *adopted by* 2012 WL 2588771 (July 2, 2012)).

---

[4]    The Court acknowledges that a "defendant may not defeat the plaintiff's motion by presenting conflicting factual assertions." *Jeong Woo Kim v. 511 E. 5th Street, LLC*, 985 F. Supp. 2d 439, 446 (S.D.N.Y. 2013) (collecting cases). Here, however, based on the parties' submissions, Plaintiffs have not contested the information pertaining to the locations where each of the named individuals worked. Notwithstanding the Court's consideration of Batchelor's Declaration, Plaintiffs fail to demonstrate that any of the named individuals in either of the Plaintiffs' Declarations worked at any location outside of New York.

Plaintiffs also reference this Court's decision in *Cohan v. Columbia Sussex Management, LLC*, in support of their position that the Eastern District has conditionally certified similar cases involving maintenance and service employees. Pls.' Mem. at 14-16; *see generally Cohan*, No. 12-3203, 2013 WL 8367807 (E.D.N.Y. 2013), *aff'd* 2016 WL 1045532 (E.D.N.Y. 2016). In *Cohan*, the plaintiffs sought certification of a class including "all service employees who work in customarily-tipped trades, including but not limited to banquet servers, waiters, bussers, bartenders, clean up crew, housemen, bellmen, runners, bartenders, clean up crew, housemen, bellmen, runners, maintenance workers, and/or hosts/hostesses." *Id*. at *4. The defendant in *Cohan*, however, requested that the court limit the class to banquet servers only. *Id*. The Court found, nonetheless, that the evidence offered by the plaintiffs suggested the alleged improper pay policy was not limited to banquet employees. *Id*. Three plaintiffs in *Cohan* submitted declarations stating that they were not paid overtime compensation while working in various capacities other than as a banquet server. *Id*. at *4-5. Two of those declarations included a list of the first and last names of other similarly situated employees whom they spoke with and who informed the plaintiffs that they too had been denied overtime compensation to which they were entitled. *Id*. The plaintiffs also submitted declarations of non-parties, one of which was completed by a member of management who stated that "'workers, such as waiters, banquet servers, clean up crew and other service workers' [ ] regularly worked over 40 hours a week and were not paid overtime compensation." *Id*. at * 5. As these facts demonstrate, *Cohan* is distinguishable. *Cohan* focused on the scope of the job titles which would make up the collective, not on certification of a nationwide class. Here, the debate is not about job classifications to be included in the class definition.

Plaintiffs attempt to rebut the lack of a factual nexus for a nationwide collective by arguing that their paystubs designating certain hours as "non-productive" were issued out of Defendant's corporate office in Virginia.  Pls.' Mem. at 6-7.  According to plaintiffs that practice is evidence that the improper designation of those hours to offset overtime compensation was a nationwide practice.  *Id.*  The Court, however, is unpersuaded, and takes note of *Anjum v. J.C. Penney Co.*, No. 13-460, 2015 WL 3603973 (E.D.N.Y. June 5, 2015).  In *Anjum*, the plaintiffs sought certification of a class consisting of all Sales Associates employed in J.C. Penney retail stores in the State of New York at any time during the relevant time period.  *Anjum,* 2015 WL 3603973 at *1.  Such a class would include nearly 3,500 sales associates.  *Id.*  The plaintiffs pointed to the existence of a jTime Guide as evidence that "J.C. Penney employees at different retail store locations in New York were subject to the same general instructions on the company's timekeeping system."  *Id.* at *8.  The court concluded, however, that because the plaintiff's "claims are not based solely on the policies stated in the jTime Guide, but also on the allegedly improper implementation thereof….the mere existence of the jTime Guide—coupled with the Plaintiffs' hearsay allegations—is not sufficient to demonstrate that Sales Associates at all of the J.C. Penney retail stores in the State of New York… were victims of the same misconduct alleged at the Staten Island Store."  *Id.*  The court reminded the parties that although the burden here is modest, "the [C]ourt cannot justify certifying a class of plaintiffs, likely numbering in the [thousands], on the basis of such thin factual support."  *Id.* (quoting *Laroque*, 557 F. Supp. 2d at 356) (internal quotation marks omitted) (citing *Lujan*, 2011 WL 317984, at *7).

Here, Plaintiffs' claims are based, in part, on the improper implementation of Defendant's "non-productive" hours policy.  Pls.' Mem. at 5; Pls.' Reply at 3.  However, the

designation of "non-productive" hours on the Plaintiffs' pay-stubs and the fact that the paystubs are issued out of Defendant's corporate office in Virginia are not enough to adequately demonstrate that the manner of implementation was consistent nationwide. *See id.* at *8 (citing *Laroque*, 557 F. Supp. 2d at 356; *Lujan*, 2011 WL 317984, at *7).

Moreover, the Complaint, asserts that Plaintiff Tanski was not required to clock in using Defendant's fingerprint system prior to the mandatory meetings. Compl. ¶ 43. It is unclear what the source of this instruction was, whether that instruction contravened the Defendant's non-productive hours policy, or whether that instruction contributed to the alleged improper coding of hours as "non-productive" hours. These observations further preclude the Court from finding that potential Plaintiffs nationwide were subjected to the very same compensation policy. As such, Plaintiffs have failed to satisfy the "modest factual showing" that they and other potential plaintiffs nationwide were victims of a common policy or plan.

### 2.    Work Performed Prior to Clocking-In

The Complaint alleges that Tanski was directed to purchase maintenance supplies twice per week before clocking in at the beginning of the workday. Compl. ¶ 17. In their Memorandum of Law, here, Plaintiffs assert that many employees are expected to perform some work-related tasks prior to "clocking-in." Pls.' Mem. at 5-6. Moreover, in his Declaration, Tanski maintains that he is "personally aware of other maintenance supervisors and workers who were also not compensated for similar work before 'clocking in' for the day." Tanski Decl. ¶¶ 17-18.

The collective action allegations in the Complaint are limited to Defendant's purported practice of failing to pay overtime for all non-productive hours worked in excess of 40 hours per week, *see* Compl. ¶ 51 — an observation which was discussed in this Court's Memorandum and

Order on Defendant's Motion to Dismiss.  Memorandum & Order [DE 54] at 7 n.4.  Defendant presents this very same argument in its Opposition, but Plaintiffs omit any rebuttal in their Reply.  Based on these factors, the Court is not inclined to certify a class of individuals with respect to Defendant's alleged failure to compensate for work performed prior to clocking-in.

### B.    Proposed Notice to Potential Opt-Ins

Defendants argue that notice should be distributed only to those maintenance and service employees whose titles are identified by Plaintiffs:  Maintenance Supervisor, Technician 1, Technician 2, Technician 3.  Defs.' Opp'n at 17.  In their Reply, Plaintiffs assert that the "motion applies to all current and former [Maintenance and Service] employees who have worked at AvalonBay.  While noting that [Maintenance and Service employees held such titles as Maintenance Supervisor, Technician 1, Technician 2, and Technician 3, Plaintiffs never explicitly limited the scope of the proposed class to only those employees."  Pls.' Reply at 6.  Little argument is set forth in support of Defendant's position. The Court finds that certifying a collective of all maintenance and service employees is appropriate.   Plaintiffs are directed to remove the terms "MAINTENANCE SUPERVISOR, TECHNICIAN 1, TECHNICIAN 2, TECHNICIAN 3" from the first page of their Proposed Notice.  The first paragraph should therefore read "If you have been employed as a NON-EXEMPT MAINTENANCE OR SERVICE EMPLOYEE at any AVALONBAY location in the state of New York anytime since October 20, 2009, please read this notice."

As to the time frame covered in the notice, the FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years.  *See* 29 U.S.C. § 255(a).  "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class."  *Jie*

*Zhang v. Wen Mei, Inc.*, No. 14- CV -1647, 2015 WL 6442545, at \*5 (E.D.N.Y. Oct. 23, 2015)

(citing *Summa*, 715 F. Supp. 2d at 388; *Francis v. A & E Stores, Inc.*, No. 06–CV–1638, 2008

WL 2588851, at \*3 (S.D.N.Y. June 26, 2008) ("noting that at the preliminary stage, 'plaintiff's

allegations of willful conduct . . . are sufficient to support defining the class based upon the

three-year statute of limitations'"), *adopted as modified*, 2008 WL 4619858 (S.D.N.Y. Oct.16,

2008)).  Here, the Complaint contains allegations of willful conduct by Defendants.  Compl. ¶¶

27, 58; *see, e.g.*, *Jie Zhang v. Wen Mei, Inc. d/b/a Hunan Dynasty*, No. 14-1647, 2015 WL

6442545, at \*5 (E.D.N.Y. 2015).  Therefore, a three-year limitations period is appropriate.

With respect to the calculation of the limitations period, courts often begin counting back

from the date of the conditional certification order or the notice since the FLSA statute of

limitations continues to run until a plaintiff consents to join the action.  *See* 29 U.S.C. § 256; *Ritz*

*v. Mike Rory Corp.*, No. 12 Civ. 367, 2013 WL 1799974, at \*3 (E.D.N.Y. 2013).  "However,

'because equitable tolling issues often arise as to individual opt-in plaintiffs, courts frequently

permit notice to be keyed to the three-year period prior to the filing of the complaint, with the

understanding that challenges to the timeliness of individual plaintiffs' actions will be

entertained at a later date.'"  *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2014 WL

4593944, at \*7 (S.D.N.Y. Sept. 15, 2014) (quoting *Trinidad*, 962 F. Supp. 2d at 564 n.14)

(internal alteration omitted); *see, e.g., Hamadou*, 915 F. Supp. 2d at 668; *Winfield v. Citibank,*

*N.A.*, 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012); *Guzelgurgenli*, 883 F. Supp. 2d at 356;

*Whitehorn v. Wolfgang's Steakhouse*, Inc., 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011).  The

Court therefore concludes that "the remedial purposes of the FLSA are best served" here by

applying the three-year statute of limitations from the date of the filing of the Complaint in this

action.  *Fa Ting Wang*, 2015 WL 4603117, at \*13; *Guzelgurgenli*, 883 F. Supp. 2d at 357 (citing

*Whitehorn*, 767 F. Supp. 2d at 451) ("In light of potential issues with equitable tolling, the Court agrees that, in an abundance of caution, the notice should be sent to all relevant employees" for the period running from the date of filing of the complaint.); *see Trinidad*, 962 F. Supp. 2d at 564 (granting conditional certification for non-exempt employees who worked for the defendant from three years prior to the filing of the amended complaint).  In light of the above reasoning, the Court utilizes the period running from October 30, 2015 to the present.

      **C.**    **Eligible Employment Dates**

      The next issue is the time frame to be utilized to identify individuals to whom the notice of collective action should be sent.  Unlike FLSA claims, NYLL claims are subject to a six year statute of limitations.  NYLL § 198(3).  Multiple courts in the Eastern District, including this Court, have held that in some circumstances where a case involves both NYLL and FLSA claims, it promotes judicial economy to send notice of the lawsuit to all potential plaintiffs at the same time even though some individuals may only have timely NYLL claims. *See D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2012 WL 6138481, at *1 (E.D.N.Y. Dec. 11, 2012)*; Lazo v. Queens Health Food Emporium, Inc.*, No. 11-CV-5848, 2012 WL 2357564, at *3 (E.D.N.Y. June 20, 2012); *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 59 (E.D.N.Y. 2011); *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 132 (E.D.N.Y. 2011); *Schwerdtfeger v. Demarchelier Mgmt, Inc.*, No. 10-CV-7557, 2011 WL 2207517, at *6 (S.D.N.Y. June 6, 2011); *Klimchak v. Cardrona, Inc.*, No. CV-09-4311, 2011 WL 1120463, at *7 (E.D.N.Y. Mar. 24, 2011)*; Cano*, 2009 WL 5710143, at *8.

      The Court has reviewed the arguments advanced by Defendant and, although the Court understands the rationale posited by the Defendant, it sees no reason to deviate from its prior rulings absent a controlling decision from the Second Circuit.  "Questions regarding the form of

notice are largely left to [the Court's] discretion." *Guzman v. VLM, Inc.*, No. 07-CV-1126, 2007 WL 2994278, at *6 (E.D.N.Y. Oct. 11, 2007) (citing *Gjurovich*, 282 F. Supp. 2d at 105-06). In exercising that discretion, the Court finds that including notice of the state law claims is appropriate since "[i]nformation regarding state law claims may help potential plaintiffs determine whether they want to opt in to this suit or to pursue their claims in a different forum, and it is not clear how the dissemination of such information would harm defendants." *Kemper*, 2012 WL 4976122, at *4; accord *Guzman*, 2007 WL 2994278, at *7. Given the geographical limitation imposed here, the Court finds it "prudent and expedient in this case to allow a six-year period to apply, even if some recipients of the notice will have claims that are time-barred under the FLSA. Since there may be a number of employees who have both timely state and FLSA claims . . . it seems logical, efficient and manageable to compel defendants' production of these names only once." *Han v. Sterling Nat'l Mortgage Co., Inc*., No. 09-CV-5589, 2011 WL 4344235, at *11 n.11 (E.D.N.Y. Sept. 14, 2011); *see D'Arpa*, 2012 WL 613-8481, at *1; *Klimchak*, 2011 WL 1120463, at *7.

The Court emphasizes that the FLSA conditional certification is limited to claims arising after October 30, 2012. The Court is, however, permitting Plaintiffs' counsel to include in the Notice information about potential state law claims dating back to October 30, 2009. This distinction must be appropriately reflected in Plaintiffs' proposed Notice.

### D.    Production of Identifying Information

Plaintiffs request "that the Court direct Defendants to produce a computer-readable list of the names, last known addresses, telephone numbers, e-mail addresses, social security numbers, dates of employment, titles, compensation rates, and hours worked per week for all

persons employed by AvalonBay as non-exempt, overtime-eligible maintenance and service employees between October 30, 2009 and the present." Pls.' Mem. at 21.

"In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members." *Velasquez v. Digital Page, Inc.*, No. 11-CV-3892, 2014 WL 2048425, at *15 (E.D.N.Y. May 19, 2014) (citing *Puglisi v. TD Bank, N.A.*, No. 13-CV-637, 998 F. Supp. 2d 95, 102 (E.D.N.Y. 2014) ("In regard to requests for names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment, courts often grant this kind of request in connection with a conditional certification of an FLSA collective action.") (internal quotations and citations omitted); *Rosario*, 828 F. Supp. 2d at 522 ("The Court finds the disclosure of potential opt-in plaintiffs' names, last known addresses, telephone numbers, and dates of employment to be appropriate."); *In re Penthouse Executive Club Comp. Litig.*, No. 10-CV-1145, 2010 WL 4340255, at *5-6, (S.D.N.Y. Oct. 26, 2010) (finding the disclosure of names, addresses, telephone numbers, and dates of employment to be "essential to identifying potential opt-in plaintiffs")); *see, e.g., Fa Ting Wang*, 2015 WL 4603117, at *14 (collecting cases from the Eastern and Southern Districts of New York). Courts are, however, reluctant to authorize disclosure of private information, such as dates of birth and social security numbers in the first instance and without a showing that the information is necessary for the plaintiff to notify potential opt-ins of the collective action. *See, e.g., Jie Zhang*, 2015 WL 6442545, at *7 (granting the plaintiffs' request for a list of the names, addresses, phone numbers, last-known email addresses, work locations, and dates of employment for potential plaintiffs, but declining request for social security numbers because the plaintiffs "have not established a particularized need" for this information); *Velasquez*, 2014 WL 2048425, at *15 (directing the defendants to

provide the plaintiffs with a list of the names, addresses, telephone numbers, email addresses, and dates of employment for all potential class members, but not their dates of birth and social security numbers); *Brabham v. Mega Tempering & Glass Corp.*, No. 13-CV-54, 2013 WL 3357722, at *8 (E.D.N.Y. July 3, 2013) ("The purpose of the production of potential opt-in plaintiffs is to enable Plaintiffs to notify them of the collective action . . . The production of names, addresses, phone numbers and email addresses plainly serves that purpose, while birth dates and Social Security numbers are not necessary for Plaintiffs to perform their notification task.") (internal citation omitted); *Rosario*, 828 F. Supp. 2d at 522  ("In light of the privacy concerns regarding employees' dates of birth and social security numbers, the production of such information is unnecessary at this juncture.  If plaintiff is unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, plaintiff may renew his application for additional information regarding those specific employees."); *Sharma*, 52 F. Supp. 3d at 465 ("With regard to social security numbers [ ] courts typically decline to allow discovery in the first instance.") (citing *Velasquez*, 2014 WL 2048425, at *15; *Rosario*, 828 F. Supp. 2d at 522; *Whitehorn* 767 F. Supp. 2d at 448)).  Accordingly, the Court is directing Defendant to provide Plaintiffs with a computer-readable list of the names, addresses, telephone numbers, email addresses, titles and dates of employment for all potential class members for the relevant time period.  The Court will not require Defendants to furnish the social security numbers of the potential class members at this time.

As to plaintiffs' request for compensation rates and hours worked per week in this context, courts routinely grant such requests.  *See e.g.*, *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 487 (S.D.N.Y. 2016); *Jeong Woo Kim v. 511 E. 5th Street, LLC*, 985 F. Supp. 2d 439, 451 (S.D.N.Y. 2013); *Hernandez v. NGM Management Group LLC*, No. 12-7795, 2013 WL

5303766, at *5 (S.D.N.Y. Sept. 20, 2013); *Hernandez v. Bare Burger Dio Inc*., No. 12-7794, 2013 WL 3199292, at *5 (S.D.N.Y. June 25, 2013). The Court finds no reason to deviate from the common practice here. Defendant is to provide the list within 14 days of entry of this Order; the list is to be treated by the parties as confidential. To the extent that the parties have not previously entered into a Stipulation and Order of Confidentiality, they are ordered to do so forthwith for this purpose. If Plaintiffs are unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, Plaintiffs may renew their application for the additional information.

### E.    Disputes Regarding Plaintiff's Proposed Notice of Pendency and Consent to Join Form

"[T]he district court has discretion regarding the form and content of the notice." *In re Penthouse Exec. Club Comp. Litig.*, 2010 WL 4340255, at *4-*5*; Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202 (S.D.N.Y. 2006) ("[T]he Supreme Court has noted that the "details" of notice should be left to the broad discretion of the trial court.") (citing *Hoffmann–La Roche v. Sperling*, 493 U.S. at 170). The heading of Plaintiffs' proposed notice, "COURT-AUTHORIZED NOTICE OF LAWSUIT REGARDING UNPAID WAGES," should be changed to "COURT AUTHORIZED NOTICE OF LAWSUIT REGARDING ALLEGED UNPAID WAGES." *See Bifulco v. Mortgage Zone, Inc*., 262 F.R.D. 209, 216 (E.D.N.Y. 2009).

Moreover, the Court directs that Section 13 of the proposed notice include the following language: "THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF NEW YORK, HONORABLE A. KATHLEEN TOMLINSON, UNITED STATES MAGISTRATE JUDGE. THE COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF THE PLAINTIFF'S CLAIMS OR OF THE DEFENDANT'S DEFENSES." *See Fa Ting Wang*,

2015 WL 4603117, at *18-*19 (requiring this language and collecting cases which required this language); *Velasquez*, 2014 WL 2048425, at *14 (same); *Alvarez v. IBM Restaurants Inc.*, 839 F. Supp. 2d 580, 588 (E.D.N.Y. 2012).

A notice of pendency should include "a neutral and non-technical reference to discovery obligations" so that such plaintiffs "understand that their participation would entail greater obligations than participation in some Rule 23 class actions." *Lujan*, 2011 WL 317984, at *11; *see, e.g., Chen v. Oceanica Chinese Rest., Inc*., No. 13-CV-4623, 2014 WL 1338315, at *10 (E.D.N.Y. Apr. 2, 2014). Defendant objects to the omission of such language in the proposed Notice. Accordingly, the Court is directing Plaintiff to modify the Notice to include the following language in the "Legal Rights" box in the "Ask To Be Included" section: "If you join the lawsuit, you may be required to provide information, respond to written discovery, appear for a deposition, and testify in court." Likewise, under the heading "Effect of Joining or Not Joining this Lawsuit" add the language: "If you join this lawsuit, you may be asked to give testimony and information about your work for AvalonBay to help the Court decide whether you are owed any money." *See Velasquez*, 2014 WL 2048425, at *12 (collecting cases which have required nearly identical language in the notice of pendency).

Defendant argues that the Notice should discuss "the obligation to affirmatively opt-in, the legal and financial consequences of not opting in, and the designation of counsel and fee arrangements." Defs.' Mem. at 21. The Court finds that Plaintiffs have already provided this information and directs Defendant's attention to the chart located at the top of page 2, entitled "YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT," as well as Sections 9-11 regarding designation of counsel and fee arrangements. As to the section in the box chart entitled "Do Nothing," the Court finds the changes requested by the Defendant to be fair and

reasonable and the Notice shall be amended accordingly.  Moreover, the Court is directing

Plaintiffs to remove the language "For Questions, Please Contact: Frank Schirripa" from the

bottom of each page.

With regard to the remaining issues raised in Defendant's redlined version of

Plaintiffs' Proposed Notice, the Court finds that many of these issues will be alleviated once the

Notice is amended in accordance with the Court's directives here.  As to the other minor

objections raised by Defendant, the Court is overruling those objections.

Plaintiffs are directed to make there changes and any others necessitated by the

Court's decision. The parties shall submit a final version of the Notice to the Court by April 19,

2017.

### F.    Methods of Dissemination

In addition to sending notice to potential class members via regular mail, Plaintiffs

request permission to send notice via email and text message, and to post notice in conspicuous

locations of AvalonBay facilities.  Pls.' Mem. at 16.  They also request the opportunity to send a

reminder postcard to all potential collective members.  *Id*. at 19-20.  In response, Defendants

argue that the notice should be posted only in non-public areas of the workplace and that it

should not be disseminated via email or text message.  Defs.' Opp'n at 22-25.

### 1.    *Posting of Notice and Consent to Join Forms*

Defendants argue that the posting should be limited to a "non-public employee

common area of the properties that are encompassed by the Court's decision and not in any areas

open to AvalonBay tenants."  Defs.' Opp'n at 22.  Courts regularly approve plaintiffs' requests

to post notices and consent forms in "non-public areas" where potential collective members are

likely to congregate, such as clock-in stations or break rooms.  *Trinidad v. Pret A Manger (USA)*

*Ltd.*, 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013) (collecting cases); *Barbato v. Knightsbridge Properties*, No. 14-7043, 2015 WL 5884134, * (E.D.N.Y. Oct. 8, 2015) ("Defendant shall post the Proposed Notice and Consent to Join forms in a non-public common area in each of the Knightsbridge Properties. Opt-in plaintiffs must return the Consent to Join form to Plaintiffs' counsel within sixty-five days of receipt."); *Fa Ting Wang*, 2015 WL 4603117, at *17 (recommending the defendants "be ordered to post, in a reasonable location at each of Defendants' worksites for drivers, one copy of the Notice of Pendency and Consent to Join form in English, Chinese, Korean and Spanish"); *Hernandez*, 2013 WL 3199292, at *5 (collecting cases); *Whitehorn*, 767 F. Supp. 2d at 449 (citing *Malloy v. Richard Fleischman & Assocs. Inc.*, No. 09 Civ. 322, 2009 WL 1585979, at *4 (S.D.N.Y. June 3, 2009); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F.Supp.2d 89, 96 (E.D.N.Y. 2010) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail.")). Consistent with the above case law, the Court grants Plaintiffs' request to post notice and consent forms in locations of Defendant's New York facilities where employees congregate, such as staff lounges, break rooms, or clock-in stations. Posting of Notice in locations of Defendant's facilities that are primarily frequented by tenants is not permitted.

### 2.    *Email*

Plaintiff requests permission to send notice to members of the proposed collective via email. Pls.' Mem. at 16. Defendants urge the court to deny this request and, in doing so, cite the Court's Report and Recommendation in *Sharma*. In *Sharma*, the Court explained that notification by electronic mail could create risks of distortion or misleading notification through modification of the notice itself or the addition of commentary. *Sharma*, 52 F. Supp. 3d at 463

(citing *Hintergerger v. Catholic Health Sys.*, No. 08-380S, 2009 WL 3464134, at *13 (W.D.N.Y.

Oct. 21, 2009); *Gordon v. Kaleida Health*, No. 08-378S, 2009 WL 3334784, at *11 (W.D.N.Y.

Oct. 14, 2009); *Karvaly*, 245 F.R.D. at 91; *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 630 (D.

Col. 2002).  In *Karvaly*, Judge Glasser observed that:

> electronic communication inherently has the potential to be copied
> and forwarded to other people via the internet with commentary that
> could distort the notice approved by the Court. Electronic mail
> heightens the risk that the communication will be reproduced to
> large numbers of people who could compromise the integrity of the
> notice process. In addition, email messages could be forwarded to
> nonclass members and posted to internet sites with great ease.

*Id*. at 91 (quoting *Reab*, 214 F.R.D. at 630).  This Court explained in *Sharma* that it shared these

concerns with Judge Glasser and therefore denied Plaintiff's request to send notice via email.

The Courts concerns in this regard have not been alleviated since *Sharma*.  Accordingly,

Plaintiffs' request to disseminate the Notice via email is denied.

### 3.    *Text Messages*

Plaintiff further requests dissemination of Notice via text message to the potential opt-in

Plaintiff's mobile phones.  Pls.' Mem. at 16-17.  The Court finds that the same concerns arising

from sending notice via email are relevant in the context of text messages.  Moreover, few cases

address whether text messages are an appropriate means of disseminating notice.  In

*Bhumithanarn*, 2015 WL 4240985, at *5,  the court permitted the plaintiffs to send notice via

text in the face of the defendant's privacy and data manipulation concerns on the grounds that the

defendants could not invoke such fear when they themselves used text as the primary means to

communicate with its employees.  *Id*.  Moreover, the court explained that "given the high

turnover characteristic of the restaurant industry, the Court finds that notice via text message is

likely to be a viable and efficient means of communicating with many prospective members of

this collective action." *Id.* (citing *Chamorro v. Bahman Ghermezian*, No. 12–cv–8159 (TPG), ECF No. 17 ¶ 5 (S.D.N.Y. Feb. 25, 2013); *McKinzie v. Westlake Hardware, Inc*., No. 09-796, 2010 WL 2426310, at *5 (W.D. Mo. Jun. 11, 2010)). The reasoning which justified the plaintiffs' use of text message in *Bhumithanarn* is absent in the instant case. The Court therefore declines to sidestep the privacy and data manipulation concerns presented by such a text messaging method of dissemination.

### 4.    *Reminder Notice*

Plaintiff requests the ability to send to potential plaintiffs a notice reminding them that their right to join the instant lawsuit is temporally limited.  Pls.' Mem. at 19.  Defendants urge the Court to deny Plaintiffs' request to distribute the reminder notice in the form suggested since it does not explain Defendant's position, does not advise potential plaintiffs of the rights and obligations of an opt-in plaintiff, and fails to distinguish between recipients who have a claim under the FLSA and those who have a claim under the NYLL only.  Defs.' Opp'n at 24. Moreover, according to Defendant, the notice "approximates a solicitation."  *Id*.

Courts in this Circuit are divided on whether reminder notices are appropriate.  *Agerbrink v. Model Service, LLC*, No. 14-7841, 2016 WL 406385, at *8 (S.D.N.Y. 2016).  Some courts do not permit plaintiffs the opportunity to distribute such a notice on the grounds that it is "unnecessary" and "could be interpreted as encouragement by the court to join the lawsuit."  *Id*. (quoting *Guzelgurgenli v. Prime Time Specials Inc*., 883 F. Supp. 2d 340, 357 (E.D.N.Y. 2012)) (internal quotation marks omitted).  Other courts have permitted plaintiffs to distribute reminder notices explaining that because the notice is sent by plaintiff's counsel, the fear that recipients may interpret the notice as encouragement from the Court is alleviated.  *Id*. (quoting *Witteman v. Wisconsin Bell, Inc*., No. 09–CV–440, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010);

44

*Sanchez v. Sephora USA, Inc.*, No. 11–CV–3396, 2012 WL 2945753, at *6 (N.D. Cal. July 18, 2012)).  Some courts permit reminder notices so long as the reminder contains language "specifically stating that the court neither encourages nor discourages participation in the lawsuit."  *Id*. (internal quotation marks omitted).

Here, Plaintiffs reference the FLSA's broad remedial purpose in requesting permission to send a reminder notice.  Pls.' Mem. at 19-20; Pls.' Reply at 7.  However, Plaintiffs fail to discuss the particular circumstances of the instant case which would that necessitate such notice.  The Court is therefore unconvinced that the notice is necessary and therefore denies Plaintiffs' request to distribute the same.  *Guzelgurgenli v. Prime Time Specials Inc*., 883 F. Supp. 2d 340, 358 (E.D.N.Y. 2012) (recognizing that most plaintiffs do not request reminder notices and that "there has been no great harm resulting from this practice," and that plaintiffs did not identify a reason why such notice was "necessary in this particular case," denying the plaintiffs' request to send a reminder notice on these grounds); *see Smallwood v. Illinois Bell Telephone Co*., 710 F. Supp. 2d 746, 754-55 (N.D. Ill. 2010).

## G.    Equitable Tolling

In the event that the Court grants the instant motion, Plaintiff requests that the Court toll the FLSA statute of limitations until such time as Plaintiffs are able to send notice to potential opt-in plaintiffs.  Pls.' Mem. at 23.  Defendants urge the Court to deny Plaintiff's request.  Defs.' Opp'n at 26-30.  Pursuant to 29 U.S.C. Section 256(b), the statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit.  However, "[a] district court may toll the limitations period to avoid inequitable circumstances…."  *Jackson v. Bloomberg, L.P*., 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (citing *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)).

"When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. New York City Transit Authority*, 333 F. 3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman*, 288 F. 3d at 512).

Here, Plaintiffs filed their motion on April 27, 2016, just under one year ago and just over three months after the Initial Conference. Courts in the Second Circuit "have permitted equitable tolling while the motion for conditional certification is before the court." *Fa Ting Wang*, 2015 WL 4603177, at *14 (citing *Robles v. Liberty Restaurant Supply, Corp.*, No. 12-5021, 2013 WL 6684954, at *13 (E.D.N.Y. 2013); *Colon v. Major Perry Street Corp.*, No. 12-3788, 2013 WL 3328223, at *8 (S.D.N.Y. July 2, 2013); *McGlone*, 867 F. Supp. 2d at 445 (Potential plaintiffs "whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings."). Given the length of time that has passed since the motion was filed, and the diligence of Plaintiff's counsel in pursuing certification, the Court is granting equitable tolling from the date the motion was filed. *See Chime v. Peak Sec. Plus, Inc*., 137 F. Supp. 3d 183, 188 (E.D.N.Y. 2015) (*Kassman v. KPMG LLP*, 11–CV–3743, 2015 WL 5178400, at *8 (S.D.N.Y. Sept. 4, 2015) (Schofield, J.)).

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for conditional certification as an FLSA collective action pursuant to Section 216(b) is GRANTED, in part, and DENIED, in part.

The Court directs counsel to revise the definition of the collective to comply with the directives in this Memorandum and Order.

The Court further orders that within 14 days of entry of this Order, Defendant is to produce a computer-readable list of the names, last known addresses, telephone numbers, e-mail addresses, dates of employment, titles, compensation rates, and hours worked per week for non-exempt maintenance and service employees who worked at any AvalonBay facility located in the State of New York dating back to October 30, 2009.

**SO ORDERED.**

Dated:  Central Islip, New York
        March 31, 2017

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge